## MARDIS' Adr's. v. SHACKLEFORD.

1. A declaration against an Attorney at Law, commencing in assumpsit, and alledging that he undertook to collect sundry notes and accounts, and concluding that " contriving to deceive and defraud," he negligently failed to perform his undertaking, is not demurrable as being both in *assumpsit* and *case*—in the conclusion unnecessary terms are employed, but they do not vitiate the declaration, or change the character of the action.

2. If an attorney acknowledge in writing that he has notes belonging to J. S., to be applied to the payment of the debts of a firm, of which J. S. was a member, he is liable to J. S. in an action for money had and received. for such part of the notes as may have been collected, and not appropriated to the payment of the creditors of the firm.

3. Where an Attorney, by a formal receipt, or mere memoranda, acknowledges that notes and accounts *past due* are placed in his hands, the presumption is

that he received them for collection ; and the legal effect of such a writing is an undertaking that he will use due diligence for that purpose.

4. J. S. declared against the defendants for the negligence of their intestate in failing, as an Attorney at Law, to collect "sundry notes and accounts," and offered in evidence a paper subscribed by the intestate, which is in these words— " Notes sent Philpot for Smith's horse, (here the notes are described, by stating the names of the makers and their amounts.) " Left with me F. & H's. note for $70, due on the 1st January, 1829, to bring suit on." Held, that this paper unexplained by other proof, was irrelevant and inadmissible ; but under the count for money had and received, the acknowledgement that F. & H's. note was left with the intestate was admissible as a link in the chain of testimony necessary to show its amount, or the plaintiff's title to the money collected thereon.

5. Where evidence is adduced which is pertinent, but insufficient, the party against whom it is offered, should ask the Court to instruct the jury as to the application and legal effect of the testimony, instead of objecting to its admission.

6. Where an objection is made to the admission of a writing, part only of which is inadmissible, the Court is not bound to distinguish between the different parts, but may overrule the objection in *toto.*

7. If the subscribing witness to a bond be dead, proof of the handwriting of the obligor is admissible to establish its execution.

8. An Attorney at Law, in whose hands notes, &c. are placed for collection, will be individually liable for neglect, or for money had and received, though he give notice that he had afterwards associated with him a partner in the practice of his profession, who collected the money ; unless the client recognized the partnership in the transaction of his business.

9. The statute does not require that a claim against the estate of a deceased person shall be presented to all the personal representatives, where there are more than one ; nor does it impose upon the creditor the necessity of presenting the evidence by which the demand is sustained.

10. An Attorney at Law is only liable for gross negligence, which is a question of fact ; and the proof of it must always vary, according to the case stated in the declaration.

11. The receipts of an Attorney for notes, &c. for collection, do not in themselves prove that he is guilty of negligence ; but if the receipt is of an old date, and the Attorney was informed of the debtor's residence, or upon due inquiry might have been, and did not discharge himself from his engagement to collect the debts, in the absence of countervailing proof, negligence may be inferred.

12. The measure of damages to which an Attorney is liable for failing to perform his undertaking with his client, is the loss which has resulted from his negligence.

13. Where an Attorney gave his receipt for receipts which third persons had given for notes, &c., the inference will be that he undertook to supervise the collection of the notes, &c., to make settlements with the persons who held them ; and if he neglected to perform that duty so that injury resulted, he will be chargeable.

14. An Attorney who collects money in his professional character, is not liable to an action until after demand ; but where he has agreed, in advance, to pay over money when collected to the creditors of his client, and fails to do so, such undertaking dispenses with a formal demand.

15. The statute of limitations in favor of an Attorney who is charged with negligence in the performance of a professional engagement, begins to run from the time he became liable to an action, although the damage may not be developed, or become definite, until sometime afterwards. And an Attorney who undertakes to collect notes &c. by suit, must sue to the first Court, to which, with *reasonable* diligence, suit could be brought; if he fails, he is suable immediately.

WRIT of Error to the Circuit Court of Talladega.

This was an action of assumpsit by the defendant in error against the plaintiffs. The declaration contains six counts, to each of which there was a demurrer, which was sustained as to the fourth and overruled as to the others. The sufficiency of the third count alone is now drawn in question. That count alledges, that in consideration of the employment of the intestate as attorney and counsel to collect sundry notes and accounts, which are described, the intestate undertook, &c. to proceed without delay in the collection of the same. Nevertheless, the intestate, not regarding his promise, &c., but contriving to deceive and defraud the plaintiff, did not, nor would proceed, &c., but wholly failed, &c. And the intestate, by such neglect, has been hindered and delayed, &c. By reason whereof the intestate became liable, &c.: and being so liable, &c. then and there undertook, &c.

On the trial, the defendants excepted to the ruling of the Court; the several points of exception are here shown in the order in which they are presented in the bill of exceptions.

1. The Court permitted to be read to the jury, notwithstanding the defendants' objection, a memoranda in the intestate's hand-writing and subscribed by him, in which fourteen notes are described as being in his hands, to be applied to the discharge of the debts of Burke, Shackleford & Co.; but which notes are admitted to be the individual property of the plaintiff.

2. The plaintiff was permitted to read to the jury a writing as follows : " *Memoranda* of notes belonging to Jack Shackleford," describing them by the names of their payors, amounts, and when due; and subscribed by the intestate as an Attorney at Law.

3. The plaintiff was allowed to give in evidence the follow paper, viz :

" Notes sent to Philpot for Smith's horse—

| | | | | | | |
|---|---|---|---|---|---|---|
| Jones Bailey and Sam'l Acton, | - | - | - | - | $75 | 00 |
| Wm. Acton and John Acton, Sen'r. | - | - | - | | 24 | 93 |
| | | | | | $99 | 93 |

Left with me F. & Hardin's note for $70, due on the 1st January, 1829, to bring suit on.

S. W. Mardis."

4. The plaintiff was allowed to read as evidence a bond made in his name, by the intestate as an attorney in fact, upon proof of the intestate's hand-writing, without proving the hand-writing of the subscribing witness, who was dead.

5. The plaintiff was permitted to adduce to the jury a letter of the intestate, written after he had received the notes, &c. of the plaintiff, (stating that his partner, Mr. Moody, would take charge of them, &c.) for the purpose of showing a partnership; and thus making admissible receipts for money made by Moody, in the name of Mardis & Moody, for the use of the plaintiff.

6. The plaintiff was permitted to read the deposition of a witness, for the purpose of proving the presentation of his claim to one of the administrators of the intestate, within eighteen months from the grant of administration, although the witness could not state positively, but only from belief founded on circumstances, that the paper accompanying his deposition was the same that was shown to the administrator; and although the claim presented was not sustained at the time of its presentation, by the proof in its favor. The Court also refused to exclude that part of the deposition of the same witness in which he related the declaration of the administrator, that he would make good so much of the claim as he could not show was discharged.

Evidence was adduced by the plaintiff to show to what extent the claims received by the intestate were collectable. It was also in proof that Burke, Shackleford & Co. had been dealing in merchandize, and were largely indebted at the time the intestate received the notes, &c. due their house; and, further, that intestate was invested with very general powers by the plaintiff in their collection, and was even authorized to exchange them for the debts owing by B. S. & Co.

Mardis' Admr's v. Shackleford.

The defendants by the counsel moved their Court to instruct the jury—

1. To entitle the plaintiff to recover on account of the notes described in the *memoranda* referred to, in the second exception to the evidence, it should be shown by extrinsic proof that the notes went into the possession of the intestate, or that he collected the money on some or all of them, or that he was guilty of gross negligence in failing to collect them : that the · bare production of the *memoranda* and proof of the solvency of the debtors, was not sufficient *per se* to authorize a verdict in favor of the plaintiff for the notes.   Which charge was refused by the Court, who, instead thereof, instructed the jury, that when an Attorney at Law gives his receipt for the collection of notes, it becomes his duty to sue upon them, and that he is responsible, unless he shows he has brought suit upon them, and used the proper means for their collection ; and that the production of the receipts signed by intestate, was evidence entirely satisfactory that the notes were received by him.

2. That the production of the receipts of intestate, with proof that the persons named therein were solvent, in the absence of all other proof in regard to liability thereupon, is not sufficient to entitle the plaintiff to recover upon the receipts. Which charge the Court declined to give.

3. The defendants are not liable in this action for monies collected by their intestate, unless a demand was made, either of them or one of them, or of intestate.   In answer to which the Court thus charged the jury—that a demand was not a formal thing, but if the jury believed, from the evidence, that the plaintiff had instructed the intestate to pay the money to other individuals, such instruction would amount to a demand.

4. That if no proof has been adduced with respect to the receipts or memoranda subscribed by the intestate, other than their execution, and the solvency of the makers of the notes described, then the statute of limitations begins to run from the dates of the receipts.   Which charge the Court refused to give, and in lieu thereof instructed the jury, that the intestate was liable to an action after he had had a reasonable time to collect the notes, and from that time the statute began to run.

5. In one of the receipts given by the intestate to the plaintiff, he acknowledged that he received the receipts of third

persons, for demands placed in their hands for collection by the plaintiff. In relation to these the Court was asked to charge the jury, that the receipts of other persons given by them to the plaintiff for notes, &c. for collection, in the absence of all other proof than that the persons giving such receipts were solvent, are not sufficient to charge the defendants with a liability on account of the receipts. In answer to which the Court charged the jury, that if the intestate received and receipted for receipts, he thereby engaged to demand settlements of the parties who gave them, or to sue if necessary; and if he failed to do this and the persons giving such receipts were good, he was guilty of gross negligence for which the defendants are liable.

6. That negligence is not to be presumed, but must be shown affirmatively by the plaintiff, and in the absence of proof to the contrary, the jury should rather presume intestate had done his duty in collecting the notes that were collectable, and paying over the amount according to instructions. Which charge the Court refused to give, but charged the jury, that as an abstract proposition, negligence was not to be presumed, yet if an Attorney receive notes, &c., on solvent individuals, and fail to sue, and use the proper means for their collection, he is guilty of gross negligence, for which he is liable, and his personal representatives after him; and it was incumbent on the defendants to show that suits were instituted on the notes, &c. and the proper means employed for their collection.

The jury found a verdict for the plaintiff below, for two hundred and seventy-five dollars and sixty-two cents, on which judgment has been rendered.

CHILTON, for the plaintiffs in error. The plaintiff in his declaration charges the defendants' intestate with negligence, and he must prove it. In the absence of such proof, it will be presumed, that the intestate performed his duty according to law. [Phil. Ev. 156.] It is a rule of universal application, extending to all the relations in society, that every one shall be presumed to have discharged his legal and moral obligations until the contrary is shown. [Bank U. S. v. Dandridge, 12 Wheat. Rep. 60, 70; Calvin v. Carter, 4 Ohio Rep. 354; Fridge v. The State, 3 Gill. & Johns. Rep. 103; Whittlesey v. Starr, 8 Conn.

Rep. 134; Truwhit v. Dupree, 2 Car. & P. Rep. 557.] The intestate had paid out as the proof shows, near twelve thousand dollars, and the charitable inference is, that that was all he had, or could collect. *" Odiosa et inhonesta non sunt praesumenda."* *" Injuria non praesumitur."* [Hartwell v. Root, 19 Johns. Rep. 345; see also, 3 East Rep. 192; 10 id. 216; Shilcock v. Passman, 32 Eng. C. L. Rep. 512; 2 Phil. Ev. C. & H's notes, 298, 478.]

He also insisted upon all the points raised upon the record, as having been improperly ruled.

RICE, for the defendant in error. That negligence is not to be presumed, is a principle which is not denied, but it is insisted that the evidence shows a want of due diligence. Notes, &c., are placed in the intestate's hands more than a half dozen years before his death, on solvent persons, and if he did not collect them, the inference is conclusive that he was guilty of neglect.

The law is careful to guard the client against the superior professional skill of his Attorney. [Paley on Agency, 5, 403, 406.] An Attorney can't delegate his authority, so as to divest himself of responsibility to his client.

The counsel answered at length the points presented for the plaintiff in error.

COLLIER, C. J.—It is supposed by the counsel of the plaintiffs in error that the demurrer should have been sustained to the third count of the declaration; because, as he insists, it is both in *assumpsit* and *case.* This argument cannot be maintained. The count alledges, that the intestate, as an Attorney at Law, undertook to collect sundry notes and accounts, and concludes that he negligently failed to perform his undertaking, &c. True, in failing to perform his promise, he is charged with " contriving to deceive and defraud;" but these words are mere expletives, and add neither force or beauty to the sentence in which they are found. *Mr. Chitty* furnishes the form of a declaration in a case similar to the present, which states a breach as follows: " Yet the said C. D. well knowing the premises, but not regarding his duty as such Attorney, nor his said promise, &c., but contriving, and craftily and subtly

intending, wrongfully and unjustly, to delay and injure the said A. B. and to deprive him of the means and opportunity of recovering the said sum of money, did not, nor would, &c. but on the contrary thereof, he, the said C. D. so carelessly, negligently and improperly behaved and conducted himself, in, &c. that by and through the carelessness, negligence, delay and improper conduct of the said C. D." &c. [3 Chitty's Plead. 166.] The terms employed in the form from which we quote are no less potent in alledging impropriety of intention and conduct on the part of the Attorney, than are the words used in the declaration in the case before us. And although in both, terms wholly unnecessary are inserted, they cannot change the character of the action, or affect the sufficiency of the pleading.

The most important questions in the cause arise out of the bill of exceptions and relate—1. To the admission of the evidence adduced by the plaintiff below. 2. To the charges given, or refused to be given to the jury.

1. We will consider the objections to the testimony in the order in which they are stated in the bill of exceptions. It may be premised, that at least some one or more of the counts in the declaration are adapted to the admission of the evidence objected to, if in itself it was admissible.

*First*—In respect to the first objection, it is not well taken. The memoranda of the intestate, as it is called, is nothing more than a receipt for promissory notes placed in his hands by the plaintiff, which he was to apply to the payment of the debts owing by a late mercantile partnership, of which the plaintiff was a member. If the intestate collected any of these notes, which he failed to appropriate according to the terms of his receipt, the plaintiff might recover the amount in an action for money had and received; the more especially as it does not appear, that the intestate came under a specific engagement to the creditors of the partnership.

*Second*—In the Exr's of Smedes v. Elmendorf, [3 Johns. Rep. 185,] it was held, that when evidence of a debt past due is left with an Attorney, who gives a general receipt for it, it will be presumed that he received it for collection; and in an action against him for negligence, by which the debt was lost, it is incumbent on him to show that he received it specially

and for some other purpose. The second memoranda of notes belonging to the plaintiff, is not a formal receipt, yet *prima facie*, it was intended as an acknowledgement that the notes particularly described in it, were placed in the intestate's hands as an Attorney at Law ; and the legal effect of the paper is an undertaking by the intestate, that he will use due diligence to collect them of the debtors. In this view it was properly allowed to be read to the jury.

*Third*—The question raised by this exception is, whether the testimony admitted should have been rejected for irrelevancy. As all intendments are favorable to the decision of the primary Court, it is incumbent on the party objecting to the admission of evidence, to show affirmatively the existence of error. [Thomas v. Tanner, 6 Monr. Rep. 52 ; Snowden v. Warder, 3 Rawle's Rep. 101.] Hence it is said, if the Court can suppose any possible state of facts to which the testimony admitted might have been relevant, it shall be presumed that such state of facts existed ; care should therefore be taken, in framing the bill of exceptions, to exclude such presumption. [3 Phil. Ev. C. & H's notes, 793 ; Hodges v. Crutcher, 1 J. J. Marsh. Rep. 504.] In the case before us the bill excludes any presumption on this point favorable to the admission of the evidence, by an express statement, that it recites all the proof adduced by the plaintiff.

The Court always protect the jury from the admission of irrelevant testimony, by excluding it on objection, in the same manner as it rejects other incompetent proof. Hart v. Newland, [3 Hawk's Rep, 122 ; Winlock v. Hardy, 4 Litt. Rep. 272.] If evidence be irrelevant at the time it is offered, it is not error to reject it, because other evidence may afterwards be given, in connection with which it would become competent. If it would be relevant in conjunction with other facts, it should be proposed in connection with those facts, and an offer to follow the evidence proposed, with proof of those facts at a proper time. [Weidler v. The Farmers' Bank of Lancaster, 11 Sergt. & R. Rep. 134; see also Clendenning & Bulkeley v. Ross, 3 Stew. & P. Rep. 267; Gee's Adm'r v. Williamson, 1 Porter's Rep. 320 ; Wiswall.v. Ross & Earle, 4 Porter's Rep. 330; Innerarity v. Byrne, 8 Porter's Rep. 176 ; Jenkins v. Noel, 3 Stew. Rep. 60 ; 2 Phil. Ev. C. & H's notes, 428.]

The paper to which this exception refers, does not appear in itself, or by any auxiliary proof proposed, to relate to the professional undertaking by the intestate with plaintiff, in the performance of which negligence is charged; nor can it be inferred from the evidence recited in the record, that it had any connection with that transaction. What is said in the paper in respect to the " notes sent to Philpot for Smith's horse," unless explained, is wholly unintelligible; and the acknowledgement of the receipt of a note by the intestate " to bring suit on," does not appear to have been made in favor of the plaintiff, and cannot, in the absence of all proof, be so intended. The possession of the paper might warrant the inference that the plaintiff was entitled to receive the proceeds of the note when collected; but without additional proof it will not show that he was the person with whom the contract to collect was made. Consequently the evidence was inadmissible under the counts which charge a contract between the plaintiff and intestate, by which the latter undertook to perform services for him, as an Attorney at Law.

So much of the writing as relates to the notes of the Actons and Bailey is irrelevant testimony under either count of the declaration ; because, thus far, it does not tend to prove any fact put in issue. But so far as it respects the acknowledgement that " F. & Hardin's note " was left with the intestate to sue on, the paper might have been admissible under the count for money had and received, as a link in the chain of evidence, necessary to show the amount of the note described in it, or the plaintiff's title to the money collected by the intestate upon it. True, it was insufficient in itself to entitle the plaintiff to recover, yet this is no objection to it; for evidence that is pertinent, it is said, cannot be rejected because it may be necessary to adduce other proof in connection. [2 Phil. Ev. C. & H's notes, 429.] The plaintiff might have shown the amount of the note by the receipt, and then have proved an admission that it was collected by the intestate, and a direct promise by him to pay the plaintiff. The fact that such additional evidence was not offered, will not make a decision erroneous, which was legal when made. The regular course, under such circumstances, is to call the attention of the Court to

the defect of proof, by asking an instruction to the jury upon the application of the testimony and its legal effect.

Had the objection been made to so much of the writing as was inadmissible, it should have been sustained, but upon a general objection, the Court was not bound to distinguish between the legal and illegal evidence; but might admit all. [Litchfield v. Falconer, 2 Ala. Rep. N. S. 280.]

*Fourth.*—There are many adjudicated cases which maintain, that where the subscribing witness to a bond is dead, proof of his hand-writing is evidence of its execution; but it is quite as regular, according to the course of decision at this day, to admit the bond upon proof of the hand-writing of the obligor. Such evidence has been repeatedly recognized to be admissible and *prima facie* sufficient.

*Fifth.*—The letter of the intestate, informing the plaintiff that he had associated with him Mr. Moody, as a partner in the practice of law, and that the latter would attend to the collection of notes &c. of the plaintiff, which had been placed in his hands, was clearly admissible. And the receipts of Moody to the debtors for money paid to him, were evidence to charge the intestate: because the letter showed that he had the intestate's authority to receive it. The plaintiff was under no obligation to look to Moody for the money collected by him. unless he substituted him as his attorney, or after the formation of the partnership, recognized Mardis and Moody as such; in which latter case, it might be necessary to proceed against Moody as surviving partner, for money received by him, if it had not been paid over to Mardis.

*Sixth.*—The statute only requires that the claims against the estates of deceased persons, shall be presented to the executor or administrator within eighteen months, &c. Under this enactment, it has never been considered necessary to present the evidence by which the demand is sustained; but the mere exhibition of the account which the creditor claims to be due him from the estate, is quite sufficient.

The evidence of the identity of the account presented to one of the administrators, and that adduced at the trial, must be considered as admissible. The circumstances which induced the belief of their identity, are stated by the witness in the deposition objected to; and they are such as authorized the pa-

per to be submitted to the jury. Positive evidence to the point is not indispensable.

It is not insisted that the account should have been presented to both the administrators; nor, indeed, could such an argument be successfully urged. In Acre v. Ross administrator, [3 Stew't. Rep. 288,] it was determined, that the presentment of a claim to one of two representatives of an estate, was a notice to both. The declaration of the administrator to whom the account was presented, that he would make good so much of the claim as had not been paid, proved nothing in an action against the administrators, as such; and as it could not prejudice, its admission was not a fatal error.

2. Several of the counts of the declaration charge the intestate with negligence as an Attorney, in failing to take the proper steps to collect notes, &c., placed in his hands, and a consequent loss to the plaintiff. An Attorney at Law is only liable to his client for gross negligence in the performance of his professional duties; and that is a question of fact to be determined by the jury. [Evans v. Watrous, 2 Porter's Rep. 205; 1 Saund. Plead. and Ev. 194; 2 Starkie's Ev. 134.]

The first inquiry to be made on this branch of the case is, what is sufficient evidence of negligence? The proof of negligence, it is said, must always vary, according to the statement of the facts of the plaintiff's case in his declaration; [1 Saund. Plead. & Ev. 195; 2 Starkie's Ev. 134,] but it is a fact which must be proved by him in order to make out the defendant's liability. [2 Starkie's Ev. 133; 1 Saund. Plead. and Ev. 194.] In the case before us, the Judge, in effect, instructed the jury, that the production of the receipts made by the intestate, was sufficient to warrant them in finding a verdict against defendant; unless it was shown, that in obedience to intestate's undertaking, he had brought suit upon the claims in his hands, and used the proper legal means for their collection. And upon the prayer of the defendants, the Court refused to charge the jury, "that the production of receipts of intestate with proof that the persons named therein were solvent, in the absence of all other proof in regard to liability upon those receipts, is not sufficient to entitle the plaintiff to recover thereupon."

The receipts of the intestate merely evidenced that demands

such as are described in them, were placed in his hands; and the law implied a promise on his part that he would employ due diligence in their collection. This implied undertaking was, however, subject to modification by instructions from the client. But as the instruction to the jury was given upon the hypothesis, that the intestate was not controlled in the performance of his duties by the plaintiff, we will, for the purpose of testing its correctness, consider such to have been the fact.

It is difficult to conceive by what course of reasoning, the intestate's neglect was deducible from the mere production of his receipts. These, we have seen, proved nothing more than the fact of retainer. To establish negligence *prima facie*, it should have been shown that the intestate was aware of the residence of the debtors, or upon due inquiry might have been informed on this point. Then, *the great length of time* which had elapsed since the receipts were given, in the absence of all countervailing proof, would warrant the inference that the intestate had omitted to use due diligence. If any of the debtors resided beyond his reach, and he desired to relieve himself from the responsibility of taking legal steps against them, or if he had collected, or failed to collect, the demands against them, he should have informed the plaintiff. The failure to give information would authorize the implication that the intestate was willing to continue his professional engagement, and that he had collected, or neglected to collect, the debts in his hands.

The measure of the damages to which an attorney is liable for the failure to perform his undertaking with his client, is the loss which has resulted from his negligence. [2 Starkie. Ev. 135; 1 Saund. Plead. and Ev. 196.] But the question, on whom does the *onus* lie to prove the damages for neglecting to collect a debt which is liquidated by note, or whether the *prima facie* inference is not, that the damages sustained are commensurate with the amount of the note, has been sometimes seriously mooted. In Bourne v. Diggles, [2 Chit. Rep. 311,] it was said that the defendant must show that diligence would have been ineffectual. [But see Wilcox et al. v. Plummer's Ex'ors. 4 Pet. Rep. 172; St. John v. O'Connell, 7 Porter's Rep. 466; The Bank of Mobile v. Huggins, Adm'r. 3 Ala. Rep. N. S. 206 ] What may be the rule of law on this point, it is un-

necessary to determine, as the plaintiff undertook to prove the solvency of the debtors, and will doubtless be prepared upon another trial to adduce the same evidence. From this view of the law, it follows that the court erred in the instruction we have noticed, as well as in the refusal to charge as prayed.

By giving his receipts for the receipts of third persons, for notes, &c. belonging to the plaintiff, the natural conclusion is, that the intestate undertook to supervise the collection of the notes, &c. and to make settlements with the persons who held them; and if he neglected to perform that duty, to the prejudice of the plaintiff, he would be chargeable. Whether the declaration is adapted to such a cause of action, may perhaps be questioned; but as this point is not raised upon the record, we will not undertake its solution.

If the intestate collected money in his professional character for the plaintiff, an action would not lie against his administrators for its recovery, until after demand made. But, as remarked by the circuit judge, the direction by the plaintiff and assent by the intestate, to pay over the sums received, to the creditors of the former, dispensed with a formal demand, and the failure thus to appropriate the money, entitled the plaintiff to his action. [Taylor v. Bates, 5 Cow. Rep. 376; Ferguson's case, 6 Cow. Rep. 596; Rathbun v. Ingalls, 7 Wend. Rep. 320; Taylor v. Armisted, 3 Call's Rep. 200; Staples v. Staples, 4 Greenl. Rep. 533.]

In respect to the statute of limitations, it may be regarded as settled law, that it began to run from the time the intestate was chargeable with negligence; for then a right of action accrued in favor of the plaintiff. For the purpose of ascertaining that time, we must again recur to the contract of the parties. Supposing it to have been what the charge to the jury assumed, it imposed upon the intestate the duty of bringing suits upon the notes and accounts which he received, to the first court to which, with reasonable diligence, they could be brought. The failure, thus to proceed, without an excuse therefor, would have been such negligence as made him liable to an action at the suit of the plaintiff.

The question, at what time the statute of limitations begins to run in favor of an attorney who was charged with negligence, was well considered in Wilcox et al. v. Plummer's Ex'rs.

[4 Pet. Rep. 172]. In that case an action of assumpsit was instituted against the testator of the defendants, on the 27th of January, 1825, and upon his death revived against his executors. It was proved that a promissory note was placed in the testator's hands for collection, by the plaintiffs, on which he brought a suit on the 7th February, 1820, against the maker, but neglected to sue the indorser. The maker proved insolvent; and then, on the 8th February, 1821, he issued a writ against the indorser, but committed a fatal misnomer of the plaintiffs, and a judgment of nonsuit was rendered against them. Before the plaintiffs were nonsuited, an action against the indorser was barred by limitation.

The declaration contained two counts : the one laying the breach in not suing until the note became barred; the other laying the breach in the mistake in the plaintiff's name; but both placing the damages upon the barring of the note by the act of limitations.

The Court say, "The only question in the case is, whether the statute runs from the time the action accrued, or from the time that the damage is developed or becomes definite. And this we hardly feel at liberty to treat as an open question. The ground of the action here, is to act diligently and skilfully; and both the contract and the breach of it, admit of a definite assignment of date. When might this action have been instituted, is the question; for from that time the statute must run. When the attorney was chargeable with negligence, or unskilfulness, his contract was violated, and the action might have been sustained. Perhaps, in that event, no more than nominal damages may be proved, and no more recovered; but, on the other hand, it is perfectly clear that the proof of actual damage may extend to facts that occur and grow out of the injury, even up to the day of the verdict. If so, it is clear the *damage* is not the cause of action." The Court then conclude, "that on the first count in the declaration, the cause of action arose at the time when the attorney ought to have sued the indorser, which was in a reasonable time after the note was received for collection, or, at all events, after the failure to collect the money from the maker. And that, on the second count, his cause of action arose at the time of committing the blunder in issuing

the writ in the names of the wrong plaintiffs." There was no necessity for the Court to be more explicit in the conclusion, as it was obvious, from the proof, that the statute pleaded operated a bar to a recovery upon either count. [See also, Benton v. Craig, 2 Missouri Rep. 198. Shff. of Norwich v. Bradshaw, 1 Cro. Eliz. 53. 2 Saund. on Plead. and Ev. 645, and cases there cited.

In the case at bar, the Court very properly refused to charge the jury that the statute of limitations began to run from the date of the receipts; but in charging that it did not begin to run until the intestate had a reasonable time to collect the notes, &c. and from the time his responsibility commenced, the Court misapprehended the law. It is true that the statute began to operate as soon as the intestate was liable to an action for negligence, but that liability we have seen attached as soon as he failed to perform his contract, that is, upon a neglect to sue in a reasonable time; which must have happened before he could have collected the notes, &c. according to the regular course of proceeding at law. Whether the statute really did perfect a bar before the suit was instituted, or whether there is anything in the record to relieve the case from its influence, are questions which are not presented for our decision.

The bill of exceptions is drawn out to an unnecessary length, and is calculated, by its prolixity, to embarrass rather than aid our examination of the points made. We mention this, as a suggestion to counsel, of the propriety of only placing upon the record such matters as are essential to a decision of the case.

It remains but to add, the judgment is reversed and the cause remanded.