## THE GOVERNOR, use, &c. v. GORDON.

1. A notary public, who receives his appointment and commission from the governor of the State, on the recommendation of the judge of the county court, is a public officer of the county.

2. Where a notary public fails to give to the indorser of a negotiable note the notice requisite to charge him, the statute of limitations of six years (Clay's Dig. 329, § 90,) commences to run, in favor of the sureties on his official bond, from the date of the default, and not from the time of its discovery, or the ascertainment of the damage, by the injured party.

Error to the Circuit Court of Mobile. Before the Hon. John Bragg.

This was an action of debt, instituted by the plaintiff against the defendant in error, as the surety of one Marsten, on a bond executed to the Governor of Alabama, for the faith-

ful discharge of his duties as a notary public.    The writ was issued on the 2d November, 1846, and the case was submitted to the court below on the following agreed state of facts : On the 4th January, 1839, a promissory note for $741, made by Jeremiah Findley and John Gody, in favor of, and indorsed by Thomas G. Newbold and S. Andrews, negotiable and payable at the Bank of Mobile, was delivered by said bank to said Marsten, who was then a regularly appointed, qualified and commissioned notary public for the county of Mobile, for the purpose of demanding payment, giving notice of non-payment to the indorser, and protesting : said notary protested the note for non-payment, and in his protest stated that he had only notified the indorser Newbold, by leaving a notice at his office in Mobile: on the 14th April, 1840, the bank sued Newbold, and at the trial in 1841, was defeated in the suit, by Newbold setting up as a defence the failure of said notary to give him notice, and proving that on the 4th January, 1839, he had no office in Mobile : up to this time the bank did not know that the statement in the protest of said notary was untrue : in April, 1842, the bank sued said Marsten, and recovered a judgment against him : Newbold was the only solvent party on the note, and has been released from liability by the default of the notary : a demand was made of the defendant Gordon before this suit was instituted.

The principal defence relied on was the statute of limitations of six years, as applicable to the sureties on the bonds of public officers.

The court gave judgment for the defendant, from which the plaintiff in error appealed, and he now assigns said judgment as error.

PHILLIPS, for appellant.

In cases of concurrent jurisdiction, courts of equity are governed by the statute of limitations—they do not decide in analogy to the law, but in obedience to it ; the decisions in those courts, therefore, upon the statute, are authority in the courts of common law.    Hovenden v. Ld. Amersley, 2 Scho. & Lef. 607, 630.

As applied to officers, the statute of limitations begins to

run from the time of their return, or when by law it was their duty to make a return. Betts v. Norris, 21 Maine, 324; West et al. v. Rice, 9 Metc. 568; Mather v. Greene, 17 Mass. 60. But in cases of fraud, the statute does not run until the discovery of it. Harrell v. Kelly, 2 McCord, 428; Rice v. White, 4 Leigh, 483; Mass. Turnpike v. Field, 3 Mass. 204; Sherwood v. Sutton, 5 Mason, 145; Raymond v. Simison, 4 Blackf. 84; Betts v. Norris, 21 Maine, 324; see dissenting opinion of Shipley, J.; 6 Bac. Ab. 386; Ballentyne on Lim. 96. So in cases when a demand was necessary, the statute would commence to run from the time of demand. Harriman v. Wilkins, 2 App. 93; Hutchens v. Gilman, 9 N. Hamp. 359.

And in case of a deposit in bank which suspended payment, the statute did not run until the depositor had knowledge of the suspension. Planters' Bank v. Farmers' Bank, 8 Gill & J. 458; Union Bank v. Planters' Bank, 9 Id. 439.

The same rule, as applied to officers, has also been applied by this court to attorneys, that the statute would run from the time of the liability incurred by not bringing suit to the first term. See Mardis v. Shackleford, 4 Ala. R. 493. But if the attorney should inform his client that he had brought suit to the first term, and the client trusts to the representation, would the attorney be permitted to plead the statute, to a suit brought against him for the damage resulting from his not suing to the first term?

In the case of the Bank of Mobile v. Huggins's adm'r, this court decided, that the one issued to give notice to the indorsers did not make the agent liable without a special damage had accrued. No action therefore accrued against the notary, until the indorser took advantage of his want of notice, and the other parties to the note were shown to be insolvent.

This is the case of a party not only not discovering the fraud in time, but prevented from the discovery by the act of the party.

The fact that the words of the statute do not contain the exception of fraud in its terms, is no stronger an argument as applicable to this statute, than to the general statute of limitations.

The Governor, use, &c. v. Gordon.

J. A. CAMPBELL, contra. A notary public is an *officer* within the meaning of the statute entitled "an act to limit actions against securities of officers." Clay's Dig. 329, § 90. A notary public is appointed by public authority; his fees are regulated by statute, in the same class of officers, as those embraced in the statute above cited. Clay's Dig. 236. He gives a bond, and for his acts of misfeasance or malfeasance, he is liable on it "in like manner and with like effect," as sheriffs or coroners are on their bonds for the faithful performance of their duties. Clay's Dig. 379, § 7.

2. The plain language of the statute fixes the date of the liability of the sureties. The action must be commenced within six years "next after the commission of the act complained of." The statute does not designate the time of the discovery of the default, as that from which the time limited by the statute is to be computed. It presupposes that every default may be discovered within six years, and that an action may be commenced in that time. It terminates the liability of the sureties, after six years have expired from the default. The question then is, when did the default of the notary occur? The answer is, when he made his false return to the bank, that he had given notice. Since that time, he has exercised no control over the subject. Utica B'k v. Child, 6 Cowen, 238; Mardis, adm'r, v. Shackleford, 4 Ala. 495; Governor, use, &c. v. Stonum, 11 Id. 679.

CHILTON, J.—A notary public who receives his appointment and commission from the governor of the State, upon the recommendation of the judge of the county court, must be regarded as a public officer of the county. The statute requires him to enter into bond, with sufficient security, to be approved of by the judge of the county court, in the sum of $2,000, payable to the governor and his successors in office, for the faithful performance of the duties of his office. Clay's Dig. 379, § 7. By the first section of the act of 1832, (Clay's Dig. 329, § 90,) it is provided that "no action, suit or motion, shall be maintained against the surety or sureties of any sheriff, constable, or other public officer of this State, for any malfeasance, misfeasance, or other cause whatsoever, hereafter committed, unless the same be commenced or pre-

secuted within six years next after the commission of the act
complained of; or if the claim be in favor of an infant, or
person *non compos mentis,* or other person, disabled by law
from bringing suit, then within three years after such disa-
bility to sue, shall cease to exist," &c. By the act of 1819,
(Dig. 379, § 7) the bond of the notary is required to be record-
ed in the county where he resides, "and may be sued on by
any party or parties injured, in like manner and with like ef-
fect, as bonds given by sheriffs and coroners, for the faithful
execution of the duties of their respective offices." We
think, from the language of these statutes, it is most manifest
that a notary public is a public officer within the meaning of
the first section of the act of 1832, and that his securities are
not liable on his bond for his malfeasance, misfeasance, or
other improper conduct, unless suit was commenced against
them "within six years next after the commission of the act
complained of."

It is insisted, however, by the counsel for the appellant,
that the cause of action could not be said to have accrued un-
til Newbold availed himself of the want of notice; as, until
then, no injury had resulted to the bank from the failure of
Marsten to give the required notice. And it is further in-
sisted, that the circumstances make out a case of fraud
against the notary, against which the statute of limitations
does not begin to run until the fraud is discovered. It might
be a sufficient answer to both these positions to say, the act
complained of was the failure of the officer to give notice to
Newbold, the indorser, and in certifying in the protest that
such notice had been left at his office in Mobile, when in fact
he had no office in the city. Since that time, the officer has
done no act in regard to the note, for which his sureties can
be held responsible. Now, is it permissible for the court,
since the statute, in plain and unequivocal terms, fixes upon
the date of the act complained of for the commencement of
the limitation, to fix upon another and different period? It
occurs to me we should by the construction contended for,
virtually annul the statute. If the statute does not begin to
run until Newbold availed himself of the want of notice, then
the bank would have the right to prolong the liability of the
surety to any period short of twelve years from the maturity

of the note.   Or, if Newbold, when sued, chose to waive the statute of limitations, and to rely upon the defence of want of notice, then the sureties' liability would be prolonged to an indefinite period at the pleasure of the plaintiff.   Such cannot be the correct construction of a statute evidently designed for the repose of the officer's sureties, and to rid them of responsibilities after the expiration of six years from the happening of the cause of complaint.   The legislature very correctly concluded, that after the lapse of so many years, it would be difficult, if not impossible, in many cases, for the securities to find proof to explain the various acts of their principal, for which they might be sued, so as to exonerate themselves from liability.   Besides, had the legislature intended to date the commencement of the statute of limitation from the discovery of the default, or from the time that the party ascertained such default would prove injurious to him, some such provision would doubtless have been inserted.   But, although there is a saving as to infants, *non compotes*, and persons who are disabled by law from bringing suits, there is none as to the case made by the record before us.   This, though not by any means conclusive, is at least persuasive to show, that the construction contended for is erroneous.   A question having a strong analogy to the one before us, was decided by this court in The Governor, use, &c. v. Stonum, adm'r, 11 Ala. Rep.  679.   In that case, a sheriff having several executions in his hands, collected the money, and returned the writs, and shortly afterwards died.   In about nine years after the return, a demand was made of his administrator for the money.   The question was, whether the statute which we have above copied, commenced running from the time of the demand.   The court held it did not, and say, that it commenced in favor of the surety when his responsibility was conclusively ascertained.   It is there said that any other construction of the statute would make it perfectly illusory, as the surety has no means of ascertaining whether the money has been paid over or not, and cannot therefore protect himself by insisting on a suit being brought, or by discharging it himself, and resorting to his principal.   In Mardis, adm'r, v. Shackleford, 4 Ala. Rep. 506, it is said: "It may be regarded as settled law, that the statute began to

run from the time the intestate was chargeable with negligence; for then, the right of action accrued in favor of the plaintiff." Many cases might be cited to show that the statute begins to run from the time of the negligence, and not from the ascertainment of the injury. See Wilcox v. Plumer, 4 Peters's Rep. 172; West v. Rice, 9 Metc. Rep. 564; Betts v. Norris, 8 Shep. Rep. 314. In Kerns v. Schoonmaker, 4 Ham. 331, it was held, that the statute begins to run as soon as the injurious act complained of is perpetrated, although the actual injury is subsequent, and could not be known, or immediately operate. See also Miller v. Adams, 16 Mass. Rep. 456; 12 Id. 127; 17 Id. 60. In the President, &c. of the Bank of Utica v. Child, 6 Cow. Rep. 238, the precise point here involved came before the court, and it was ruled that the statute commenced running from the time the notary failed to give the notice required to fix the liability of the indorser, and this, although the injury was ascertained by suit and judgment within the period of six years. So that, leaving out of view the peculiar phraseology of our statute, we think the law is clear, that the general statute of limitations, if it were six years, would embrace the case at bar. That nominal damages could alone be received in some cases, is no objection to dating the statute from the time of the default. See Mardis's adm'r v. Shackleford, *supra*. The party who apprehends the damage must quicken his diligence to ascertain it, or rely upon his suit brought within the six years, to recover for the probable injury. 4 Cow. Rep. 245. No question as to the fraudulent concealment of the cause of action by the notary from the plaintiff arises in this case. There is no evidence of such fraud, and we are not to presume it, when the facts may consist with honesty of intention; *non constat*, but that the notary supposed he had given the notice by leaving it at Newbold's office. He may be liable for want of that diligence which the law requires of him in ascertaining the fact of the indorser's residence, and no question of fraud be involved. We therefore defer going into an examination of the many conflicting authorities upon the point, whether a fraudulent concealment would avoid the statute until a case should arise necessarily involving it. See Smith v. Bishop, 9 Verm. Rep. 110; Allen

v. Mille, 17 Wend. Rep. 202; Fee v. Fee, 10 Ohio Rep. 469; Troup v. Smith's ex'rs, 20 Johns. Rep. 33; Ib. 277; Abell v. Harris, 1 Gill & Johns. Rep. 367; Baines v. Williams, 3 Iredell's Rep. 481; Martin & Yerg. Rep. 361; Miles v. Berry, 1 Hill's (So. Ca.) Rep. 296; *contra*, Doug. 664; 5 Mason's Cir. Ct. Rep. 449; 3 B. & A. 436; 3 B. & Bing. 73; 3 Don. & R. 330.

We think it is clear, that the plaintiff having failed to prosecute the security upon the bond for more than six years' from the commission of the notary's default, the statute exempts the surety from liability, and that the court below properly gave judgment for the defendant.

The judgment is affirmed.