# Dothard *v.* Denson.

*Statutory Real Action in nature of Ejectment.*

1. *Struck jury in civil cause; challenge for cause.*—When a struck jury is demanded in a civil cause, although the statute provides that, from the list of jurors in attendance upon the court, furnished by the sheriff, "a jury must be obtained by the parties striking alternately one from the list until twelve are stricken off," and that "the jury thus obtained must not be challenged for any cause" (Code, § 3018); yet either party may challenge a juror for cause, on account of bias or interest in the particular case; and the fact that a juror served in that capacity on a former trial of the cause, which resulted in a mistrial, is good ground of challenge for cause.

2. *Adverse possession; what constitutes.*—Although a deed may be necessary to show a valid title to land, it is not an essential element of adverse possession, which may be acquired and held under a sale of which there is no written evidence.

3. *Declarations of person in possession of land.*—The declarations of a person in possession of land, as to the nature and character of his possession, are competent evidence in his favor; but his statements as to the person from whom he bought it, and as to the price paid, are merely narrative of a past transaction, and are not admissible as evidence.

4. *Possession as evidence of title.*—A plaintiff in ejectment may recover upon proof of possession merely, as against an intruder or trespasser, or one who does not show a better right; but possession is presumed, in the absence of all evidence to the contrary, to be rightful, and in subordination to the true title; and the burden of proving it to be adverse, as against the owner of the legal title, is on the party asserting it.

5. *Adverse possession; what constitutes.*—Good faith in claiming possession and title is an indispensable element of adverse possession; but this does not imply or involve a belief on the part of the possessor in the strength or validity of his title.

6. *Same.*—When a person enters into the possession of land as the tenant of another, or in subordination to the title of another, his possession does not become adverse as against that person, until there has been a disclaimer and disavowal of his title, and notice thereof brought home to him, either actual, or so open and notorious as to raise the presumption of notice; and this possession does not ripen into a title, unless continued subsequently, without interruption, for ten years.

APPEAL from Circuit Court of Cleburne.

Tried before the Hon. LEROY F. BOX.

This action was brought by William Dothard, against Philip Denson and others, to recover the possession of a small tract of land, particularly described in the complaint; and was commenced on the 17th July, 1877. The defendants pleaded the general issue, and the statutes of limitation of ten and twenty years; and issue was joined on these pleas. On the trial, as the bill of exceptions recites, "the plaintiff having demanded a

struck jury, the clerk thereupon delivered to the counsel of the plaintiff, and to the counsel of the defendant, a list of each panel of the jurors, there being twelve jurors on each panel at the time. The plaintiff's counsel moved the court to exclude two of the jurors from the panel, on the ground that they had been members of the jury at a previous term to which this cause was submitted for trial, when there was a mistrial; and this objection was admitted by the defendants to be true. The plaintiff moved the court to exclude said two jurors from the panel, and to have their places supplied by qualified jurors; which motion the court overruled, and the plaintiff excepted. The defendants struck one of said jurors from the panel, and the other served on the trial."

The plaintiff proved his possession of the land in 1844, or 1845, and the payment of rent to him, for several years, by persons who were digging for gold on the land, or cultivating small detached portions; and his purchase of the land, in 1870, at an administrator's sale. A witness for the plaintiff testified, that before Denson built a house on the land, in 1851, or 1852, he asked and obtained plaintiff's permission to build; and that he, witness, then a slave, was sent by plaintiff to assist in putting up the house. Other witnesses for plaintiff testified to declarations made by Denson, at various times during the years 1863-4, 1869, and 1873, disclaiming title in himself, and acknowledging that he held under plaintiff. Said Denson, testifying as a witness for defendants, denied that he had ever asked plaintiff's permission to build, or had ever held under him, or acknowledged his title in any way; and he claimed to have bought the land, by verbal contract, from one Curran Pettitt. D. V. Crider, a witness for defendants, " testified that, from the time Philip Denson built on the land, he mined on all the lands sued for, up to the time he cleared and inclosed them for farming purposes; and that in 1844, prior to said Denson's purchase from Pettitt, hereinafter mentioned, one Putnam lived on said west half, and had a cabin and a cleared patch on it. Defendants proposed to prove by said witness, that said Putnam, at said time above named, sold his interest in said west half to Curran Pettitt, for a wagon and steers; that the sale was verbal, there being no writings, and the parties being at the time in the road at Arbacoochie." The plaintiff objected to the admission of this testimony, " on the ground that it was illegal and irrelevant, and because the said sale was not in writing." The court overruled the objection, and allowed the testimony to go to the jury " as evidence under the statute of limitations;" and plaintiff excepted. The bill of exceptions further states in this connection: "There was no evidence that Putnam then and there, or at any other time, put said

Pettitt in actual possession of his interest in said land.   Pettitt said to Putnam, ' *Here are your steers and wagon, for your interest in the west half of six ;*' and he said, ' *It is all right;*' and this was all of it that the witness testified to in regard to said sale."   Several witnesses for the defendants were allowed to testify, against the objections of the plaintiff, to the declarations of said Denson, while living on the land, " that he had bought said land from Curran Pettitt, and paid him a valuable consideration therefor ;" and to the admission of these declarations as evidence exceptions were duly reserved by the plaintiff.

The court refused six charges in writing asked by the plaintiff, and gave eighteen charges asked by the defendants.   The opinion of the court renders it unnecessary to set out these charges at length, as the principles enunciated can be understood without them.   The refusal of the charges asked, the charges given and excepted to, and the other rulings to which exceptions were reserved as above stated, are now assigned as error.

Jno. T. Heflin, and Aiken & Martin, for appellants.

Smith & Smith, *contra.*

BRICKELL, C. J.—The present statute, in regulation of the right of parties to civil causes to demand a struck jury (Code of 1876, § 3018), is not materially variant from the former statute (Clay's Dig. 459, § 52).   When the right is demanded, neither party,—whether it is the party making the demand, or his adversary,—is to be subjected to the hazard of being compelled to submit the issue to the verdict of jurors who may be of the regular panels in attendance upon the court, and yet subject to challenge because of bias or interest as to the particular case.—*Davis v. Hunter*, 7 Ala. 135.   The right of the parties to a jury free from bias or interest is not lost, nor subjected to chance or peril, because one party, in the exercise of a legal right—exercised, it is presumed, that an impartial jury may be secured—demands a struck jury.   Jurors who were members of a former jury, to whom the cause had been submitted, discharged, and a mistrial had, because the jury could not agree, are not competent jurors upon a subsequent trial of the cause ; they are not impartial—free from the bias of formed opinions.—*Smith v. State*, 55 Ala. 1.   The Circuit Court erred, in not excluding from the panel the two jurors to whom objection was made.

2. *Prima facie*, the sale of the lands by Putnam to Pettitt was irrelevant.   If evidence of the sale had been offered, in connection with evidence that Pettitt subsequently sold to Den-

[Dothard v. Denson.]

son, and that he entered, claiming possession and title from the sale, the evidence would have been relevant. That there was no written evidence of sale, would not have been material. A claim of title, rendering a possession adverse, may rest upon a sale of which there is no written evidence. The writing may be essential, to render the title valid; but it is not the validity of the title claimed, which is an element of adverse possession. The claim, and intention to claim title and possession, however the title may be derived, distinguishes the possession from that of a mere trespasser. But the evidence, not having been offered in connection with evidence of this character, and no such evidence having been subsequently adduced, was improperly admitted.—*Mardis v. Shackelford,* 4 Ala. 493; *Bates v. Terrell,* 7 Ala. 129.

3. The declarations of Denson, that he bought the land from Pettitt, and of the price he paid, were inadmissible. The declarations of a party in possession of property, real or personal, explanatory of the possession, are received in evidence on the principle of *res gestæ.*—1 Brick Dig 843, §§ 558–59. But his declarations merely narrative of past transactions, or respecting the source of the title, or the contract by which possession was acquired, are inadmissible.—*Ib.* 843, § 560.

4. The principal point of contention in the Circuit Court was directed to the character of the possession of the premises by one of the defendants. It seems not to have been disputed, that the possession had been continued for a period of time which barred the true owner of the right of entry, and would be protected by the statute of limitations, if it was adverse. Numerous instructions were given and refused upon this point, which are now assigned as error. It would not serve any useful purpose to consider them separately. There are a few general principles governing this question, illustrated by repeated decisions of this court, which were not observed in the giving and refusal of several of these instructions, and observance of which, upon another trial, will lead to a just determination of the cause.

The mere possession of land is not *prima facie* adverse to the title of the true owner All presumptions and intendments are favorable to the title, and possessions are not presumed to be hostile, but rather in subordination to it. As to an intruder, or trespasser, or as to one who does not show a better right, possession of lands, like the possession of personal property, is *prima facie* evidence of title, and will support ejectment. But, though this presumption attaches to the possession—that it is an occupancy by right—the presumption disappears in the presence of the title. When the title is shown not to attend the possession, but that it resides in another, the law, not favoring

[Dothard v. Denson.]

wrong, will not presume that the possession was taken, or is held and claimed, in hostility to the title. The burden of proving the possession adverse—that it was taken and held under a claim of title hostile to the title of the true owner—rests upon the party asserting it.—*Brown v. Cockrell*, 33 Ala. 38; *Herbert v. Hanrick*, 16 Ala. 581; Ang. Lim § 385; 2 Smith's Lead. Cases, 642.

A material inquiry in this cause—one the jury will not fail readily to solve, under proper instructions—is, whether the defendant, Denson, entered upon the lands in good faith, claiming title to them; and whether the possession and claim was continuous and uninterrupted, for the period of ten years before the commencement of this suit. We say *in good faith, claiming title;* but we must not be understood as saying, that the inquiry as to good faith in claiming title involves an inquiry into his belief in the strength of his title, or that he had any title. It is good faith in claiming possession and title—the real intention to claim the possession as his own, distinct from, and hostile to, the title of the true owner. If that was not his real intention, there is an absence of an indispensable element of adverse possession. The true owner, it may be, during any period of the possession, could have resorted to legal remedies, and ejected him. But he was not bound to resort to such remedies —it rested in his election, whether he would treat the possession taken without claim of right, and not in hostility to his title, as an ouster or disseisin, or as dependent upon his pleasure for its continuance.—Ang. Lim. § 387; *Farmer v. Eslava*, 11 Ala 1028; *Ormond v. Martin*, 37 Ala. 598; *Manly v. Turnipseed*, 37 Ala. 522.

6. The whole doctrine of adverse possession rests upon the presumed acquiescence of the party immediately affected by such possession. Therefore it is, when possession of property is originally held and acquired in subordination to the title of the true owner, to constitute the continued possession adverse, there must be a disclaimer of the title of him from whom the possession was acquired, and an actual hostile possession of which he has notice, or which is so open and noto ious as to raise a presumption of notice.—*Lucas v. Daniels*, 34 Ala. 188; *Shelton v. Eslava*, 6 Ala. 230; *Alexander v. Wheeler*, 69 Ala. 332; *Johnson v. Collins*, 57 Ala. 304. If Denson originally entered upon, and acquired the possession of the lands, by the permission of Dothard, he entered in subserviency to his title Unless he has subsequently, and continously for the period of ten years, openly disclaimed and disavowed the title of Dothard, asserting an adverse right and title in himself, of which notice is brought home to Dothard, there is no foundation for

[Humes v. Bernstein.]

the operation of the statute of limitations.—*Zeller v. Eckert*, 4 How. 289.

If, during the period of the possession, Denson declared that the lands were Dothard's, or that he was holding under Dothard, or by his consent, the possession was permissive, not adverse. Nor will a continued possession after such declarations avail to mature a title under the statute of limitations, unless Denson changed the character of his possession by disavowal and disclaimer, or by the exercise of acts of ownership inconsistent with a possession in subordination to the title, of which Dothard had notice.—Ang. Lim. § 384. And the declarations of Denson while in possession, that he had no title, or that he did not claim title, whether his possession was or not by permission of Dothard, are evidence that his possession was not adverse, capable of maturing into title under the statute of limitations.—2 Smith's Lead. Cases, 642.

The rulings of the Circuit Court were inconsistent with these views, and its judgment must be reversed, and the cause remanded.