Crawford *vs.* Gaulden.

MILTON CRAWFORD, plaintiff in error, *vs.* JOHN P. GAULDEN, defendant in error.

1. Where the verdict is right in itself, and should have been rendered, had the entire charge been given in accordance with positions rightly assumed by the plaintiff in error, it will not be disturbed because of erroneous instructions.
2. Where there has been no levy made upon the property of a principal in judgment, and no notice given by the surety to proceed against the property of his principal, the rules of law regarding forbearance are the same after judgment as before.
3. Mere forbearance towards the principal, in the absence of notice from the surety to proceed against the former, does not discharge the latter.
4. A promise to forbear, for a definite time, will not discharge surety, unless it be a promise binding in law upon the creditor, " such as will tie his hands."
5. No such promise is binding unless supported by a consideration, and the payment of a part of the debt is not a good consideration.
6. The cases of Curan vs. Colbert, 3 Ga., 239, and Brown vs. Riggins' Ex'ors, Ibid, 405, distinguished from this case.
7. If an attorney-at-law, controlling several *fi. fas.* in favor of different creditors against the same debtor, be instructed by the plaintiff in the

senior judgment, to indulge the defendant for a specified time, and meanwhile cause the junior *fi. fas.* to be levied on the debtor's property, and money thereby made, he commits no breach of duty towards his client, in the senior *fi. fa.*, by applying the money so raised to the satisfaction of the junior *fi. fas.*

8. In an action against an attorney for negligence or unskillfulness in the conduct of business, the Statute of Limitations commences to run from the time the negligent or unskilful act was committed, and plaintiff's ignorance of such act cannot affect the bar of the statute.

9. A new trial refused on the ground of newly discovered evidence, for the reasons that it is cumulative, and that due diligence had not been used prior to the trial.

Trespass on the case, in Decatur Superior Court. Tried before the Hon. AUGUSTUS H. HANSELL, Judge presiding, at October Term, 1860.

The record in this case presents the facts and questions following :

At the August Term, 1842, of Decatur Superior Court, a judgment was recovered in favor of Robt. Y. Jenkins against Demsey Harrell and William Wooten, principals, and John Harrell, security on appeal, for the sum of $4,146 10, principal debt, and $607 09 interest thereon, and $331 68 damages for a frivolous appeal, with costs of suit.

Upon this judgment a *fieri facias* was issued on the 17th of January, 1843.

The judgment and *fi. fa.* were assigned to Milton Crawford, and the collection of the same was confided to John P. Gaulden as an attorney-at-law.

At the time this judgment was rendered, and for some time thereafter, Dempsey Harrell had ample property, subject to the lien of the judgment, to satisfy the same in full.

About the 1st November, 1842, it was agreed between Gaulden and Dempsey Harrell, that if the latter would pay $900 00 on the *fi. fa.*, he should be indulged for the balance for the space of twelve months, and Dempsey Harrell paid the money, and the indulgence was given. In November, 1843, it was again agreed between Gaulden and Dempsey Harrell, that the latter should pay upon the *fi. fa.* $712 00,

and receive indulgence on the balance for another twelve months, which agreement was complied with and carried out.

These indulgences were given by Gaulden with the knowledge and consent of Crawford, and the payments made were to go in reduction of the debt, although understood by Crawford to be a *bonus* or premium for the indulgence and forbearance to press the collection of the *fi. fa.*

There is a conflict in the evidence as to whether John Harrell, the security on appeal, knew of and assented to these indulgences or not. Pending the two years for which indulgence was granted, the property of Dempsey Harrell, amounting to some $1,200 00, was sold at sheriff's sale under *fi. fas.* of younger lien than the *fi. fa.* belonging to Crawford, which younger *fi. fas.* were also controlled by Gaulden, as attorney for the plaintiff, and the money arising from such sale was received and appropriated by Gaulden to the payment of such younger *fi. fas.*

Dempsey Harrell received a letter from Crawford, dated 10th of September, 1842, in which it was proposed that the principal, interest and damages due on the judgment should be aggregated, and sixteen per cent. on the whole amount should be added, and that Harrell should give him a draft on New York for the amount, with such security as would be satisfactory to Gaulden and Strong, and that in the meantime the judgment remain open as collateral security for the payment of the draft; then, all this being done, Crawford would forbear to press the collection of the *fi. fa.* until the 1st of October, 1843.

This letter was shown by Dempsey Harrell to Gaulden, but it does not appear from the record that the arrangement was ever carried out, nor does it appear that the indulgence hereinbefore mentioned had anything to do with that arrangement.

Some time before December Term, 1844, Gaulden placed the *fi. fa.* in the sheriff's hands to be levied on the property of John Harrell, the security on the appeal. When the subject was mentioned to him, he begged the sheriff to delay the levy until he could see his brother, Dempsey Harrell, and

get him to bring over his property to sell in the place of John Harrell, which request the sheriff granted. Some fifteen or sixteen negroes of Dempsey Harrell's were carried across the line into the State of Alabama early in January, 1845, and there was no property of his which could be reached to satisfy the judgment. On the 10th of January, 1845, the *fi. fa.* was levied on fifteen of John Harrell's negroes, and on the 20th of January, 1845, John Harrell wrote to Crawford, begging him to indulge him a few months, stating in the letter that the levy could stand on the *fi. fa.*, and that there would be no 'danger; that his property was all subject to the debt, but that he wanted a chance to make the money out of Dempsey Harrell, in which he thought he could succeed. He insisted in the letter that he did not wish to make the debt less secure, but promised that if Crawford would give him a little time he should have his money; that all the property he held was in his own right; that he did not intend to squander it, but only wanted to try Dempsey Harrell first, and would not ask Crawford to await any lawsuit to condemn Dempsey Harrell's property, and that if, on sale day, in May, 1845, any such issue arose, then his, John Harrell's, property could be sold.

John Harrell did make an effort to get property from Dempsey Harrell to satisfy the debt, but failed.

On the 14th of February, 1845, John Harrell filed his bill in Decatur Superior Court, alleging that the indulgence was given to Dempsey Harrell without his knowledge or consent; that Wooten was insolvent; and that by means of the indulgence to Dempsy Harrell by Gaulden and Crawford, the property of Dempsey Harrell was squandered and sold, and the proceeds applied to junior judgments in disregard of the rights of John Harrell, who was but a security. He further alleged in his bill, that when he asked the sheriff and Crawford to indulge him, as hereinbefore stated, he was not aware that indulgence had been granted to Dempsey Harrell, and that he made the promise to pay the money, and the admission that his property was bound for the debt, in ignorance of his rights as a security, and in ignorance of the

Crawford *vs.* Gaulden.

facts upon which he was discharged. The bill prayed, amongst other things, that an injunction issue, restraining the sale of his property under the *fi. fa.* until the bill should be answered, and heard upon its merits.

The injunction was granted as prayed for, and the bill was also answered by Gaulden and Crawford.

On the 14th of April, 1853, the equity case was compromised and settled by the parties upon the following terms, to wit: Dempsey Harrell paid in full of the *fi. fa.*, $4,700 00, $2,343 00 in cash, and turned over to one Gibson, as agent of Crawford, fifty-six bales of cotton, which Gibson was to sell, and retain out of the proceeds a sum sufficient to pay the balance of the $4,700 00, and if there should be any excess, it was to be returned to Dempsey Harrell, and if a deficit, Harrell was to make it good.

This settlement was placed on the minutes of the Court, as a disposition of the case. It also appears, from the record, that a rule was taken at the April Term, 1853, against Gaulden for the money which he had collected on the *fi. fa*, as he and Crawford could not agree as to the fees due him in the litigation. Gaulden answered the rule, showing that he had collected on the *fi. fa.*, at different times, the aggregate sum of $526 91; that he paid cost for his client to appeal in the equity case, $42 12½, and also $50 00 to associate counsel in said equity case; that $900 00 at one time, and $712 00 at another time were paid on said *fi. fa.*, and remitted to the plaintiff, and that, when the equity case was settled, $4,700 00 more were paid, making, in all collected on the *fi. fa.*, $6,838 91; that as the case was litigated, difficult and laborious, and protracted for near nine years, respondent, Gaulden, claimed ten per cent. on the amount for his fees in the litigation, to wit, $683 00; that on this basis the account would stand as follows: In hands of Gaulden, $526 91. Deduct therefrom the cost aforesaid, paid by Gaulden, $42 12½, and Hines' fee as associate counsel, $50 00, leaves in Gaulden's hands $434 78. Deduct this latter amount from the $638 00, claimed by Gaulden for fees, leaves due to Gaulden, $248 22, which he asks may be re-

tained for him out of the fund in the sheriff's hands, arising out of the litigation.

Crawford, by his counsel, controverted Gaulden's answer, charging him with unskillfulness and mismanagement in the case, by which he, Crawford, was driven to employ other counsel, and compelled to compromise the equity case at a great loss, and that he, Gaulden, was only entitled to fees for prosecuting the debt to judgment in the first instance, and collecting and forwarding $1,612 00, upon which less than five per cent. was reasonable compensation.

Upon the trial of this issue the jury awarded to Gaulden $300 00 for his fees, and he was directed to pay to plaintiff $226 91, the balance in his hands.

On the 10th day of February, 1854, Crawford brought an action against Gaulden to recover damages for his unskillful management of the case against Dempsey Harrell and Wooten as principals, and John Harrell as security on appeal, alleging misconduct on the part of Gaulden in granting indulgence to Dempsey Harrell, and allowing his property to be sold and the proceeds applied to younger *fi. fas.*; whereby John Harrell, the security, was discharged, and Crawford was compelled to compromise the case in equity at a great loss and sacrifice of $2,500 00.

In order to take the case out of the operation of the statute of limitations, the plaintiff alleged in his writ, that the fact of unskillfulness, misconduct and mismanagement were unknown to him until April Term, 1853, of Decatur Superior Court, when the facts were disclosed in the trial of the equity case aforesaid.

To this action Gaulden pleaded as follows: 1. The general issue. 2. That the cause of action, if any, existed and accrued to plaintiff more than four years before the action was brought. 3. That the very question of unskillfulness and mismanagement, if any, was tried and adjudicated under the rule against defendant before stated, and that by the judgment on the rule, plaintiff was estopped. 4. That if plaintiff suffered any loss or damage, it was the result of his own act in compromising the case in equity, and the indulgence of

Dempsey Harrell was by the consent and direction of the plaintiff, and that it was not such indulgence as discharged John Harrell, the security.

Upon the trial of the case in the Court below, the jury upon the facts aforesaid, and the charge given them by the presiding Judge, returned a verdict in favor of the plaintiff for the costs of the suit.

Counsel for the plaintiff then made a motion for a new trial, on the following grounds, to-wit:

1. Because the jury found contrary to the following charge of the presiding Judge: "that if the defendant had charge of the plaintiff's *fi. fa.* for collection against D. Harrell and Wooten as principals, and John Harrell as surety, and when money was raised by the sale of D. Harrell's property by the sheriff, he, Gaulden, received and claimed the proceeds of such sale on junior *fi. fas.* in his hands as plaintiff's attorney, then John Harrell, as surety, was discharged to the extent of the money thus claimed and received, and Gaulden thereby made himself liable to the plaintiff, unless Crawford or Gaulden had given to D. Harrell such indulgence as prevented him from claiming the money on Crawford's *fi. fas.* But if the evidence disclosed the fact, that in giving this indulgence the defendant reserved the right to claim any money that might be raised by sale of property under other *fi. fas.*, then a failure so to claim the money made Gaulden liable."

2. Because the Court erred in giving that part of the foregoing charge, relative to Crawford's giving indulgence, as there was no evidence that he ever gave any indulgence, except through the defendant as his attorney.

3. Because the jury also found contrary to the following charge, given by the presiding Judge: "That if Gaulden was the attorney-at-law of Crawford, charged with the collection of this debt, and gave indulgence to D. Harrell for a valuable consideration, without the consent of John Harrell, the surety, then the latter was discharged, and Gaulden liable."

4th. Because the Court erred in charging the jury: that if the consideration of sixteen per cent. for delay or indul-

gence was a reduction of the debt, and not a *bonus*, then there was no consideration, and the indulgence given was not binding, and the surety was not discharged, and Gaulden was not liable."

5. Because the Court erred in charging the jury, at the request of counsel for defendant, "that the mere indulgence to D. Harrell without consideration, did not discharge the surety, and if it did, if such acts were done as would have discharged the surety, Gaulden is not liable to Crawford for them if Crawford authorized the acts; nor is Gaulden liable for any loss sustained by Crawford in consequence of his act," there being no evidence justifying the charge.

6. Because the Court erred in charging the jury: "that if Crawford, when he proposed to give time for the payment of the money, left the matter in taking security, to the discretion of Gaulden and Strong, and Gaulden acted fairly, and took such security as was good at the time. or such as an ordinarily prudent man would have taken, he is not liable for the want of skill," there being no evidence that he took any security.

7. Because the Court erred in charging the jury, at the request of defendant's counsel, "that if Crawford agreed with D. Harrell to postpone the collection of his debt for one or two years, for sixteen per cent. *bonus*, and the sixteen per cent. was paid and accepted for the time, and in the mean time D. Harrell's property was sold under younger *fi. fas.*, Gaulden was not bound to claim the money arising from the sale upon Crawford's *fi. fa.*

8. Because the Court erred in charging the jury, at request of defendant's counsel, "that if Crawford did not instruct Gaulden to take additional security besides John Harrell, he was not bound to do so."

9. Because the Court erred in charging the jury, at the request of defendant's counsel, "that if Gaulden was instructed to see that the security was good, and John Harrell was the security, and good, he was not bound to take other security; that if Gaulden was instructed to take security,

Crawford *vs.* Gaulden.

and took none, he is not liable if the damage resulted from some other cause, and not from his neglect to take security."

10. Because the Court erred in not charging the jury, as requested by plaintiff's counsel, "that if the agreement to indulge one or two years at a reduction of sixteen per cent., though it might not have been binding on Crawford, yet if the agreement was kept, and the indulgence given and continued, and the risk of the surety was increased by the delay and indulgence, the security was discharged, unless the security had consented to the indulgence, and in that event Gaulden was liable."

11. Because the jury found contrary to law.

12. Because the jury found contrary to evidence.

13. Because the jury found contrary to law, the evidence, the charge of the Court, and the equity of the cause.

14. Because the plaintiff, since the trial of the case, had discovered new evidence, to-wit: that after the sale of D. Harrell's property, by which some $1,200 00 was raised, there was a fractional lot of land also sold as his property, under a *fi. fa.* in favor of one Porter *vs.* D. Harrell, principal, and John Chaseen as security, and that this was the last of D. Harrell's property sold by the sheriff, and that John P. Gaulden, as plaintiff's attorney, claimed and received the money on Crawford's *fi. fa.*, he, Gaulden, being the purchaser.

This last ground was supported by the affidavit of plaintiff's attorney, who had the sole management of the case, the plaintiff residing in Mississippi, and also by the affidavit of James Griffin, the witness who was sworn on the trial of the case, but who had forgotten the facts whilst he was testifying.

After argument had thereon, the presiding Judge overruled the motion, and refused the new trial.

This decision is the error assigned.

Mr. Justice LYON having been of counsel in this case, did not preside when it was heard.

DAVID A. VASON, representing WARREN & WARREN, for the plaintiff in error.

ISAAC E. BOWER, for defendant in error.

*By the Court.*—JENKINS, J., delivering the opinion.

This case comes up on exception to the judgment of the Court below, refusing to grant a new trial on various grounds stated in the motion.

Those grounds allege error: 1. In charges given and refused to the jury by the presiding Judge. 2. In the verdict, as contrary to the charge of the Court, to law, and to the evidence. 3. Exception is taken that the Court below did not grant a new trial on the ground of newly discovered evidence.

We deem it unnecessary to consider the errors alleged against the charge of the Court in detail. We dispose of them all under a rule established by numerous decisions of this Court, viz: that where the verdict is right in itself, and should have been rendered, had the entire charge been given, in accordance with the positions rightly assumed by the plaintiff in error, it will not be disturbed because of erroneous instructions. 6 Ga. R., 324; 10 Ga. R., 429; 14 Ga. R., 55; 15 Ga. R., 155; 17 Ga. R., 267, 435; 22 Ga. R., 237. The application of this rule will appear when we consider the exceptions taken to the verdict.

Our enquiry, then, is, was this verdict right under the evidence and the law controlling the case? To arrive at a proper solution of this question, regard must he had to the allegations in the declaration constituting the gravamen of the action against the defendant. Of these there are two, viz: After reciting that the plaintiff had recovered a judgment against one D. Harrell and others, as principals, and one J. Harrell, as security on the appeal, the defendant being the plaintiff's attorney of record in said judgment, and charged with its collection, the allegation is, that the said D. Harrell, one of the principal debtors, desired indulgence,

and the plaintiff proposed terms upon which it would be granted, among which was that the security should be satisfactory to Gaulden, (the said attorney and defendant in the case now before us,) that said Gaulden, as such attorney, had granted indulgence on said judgment for one year, without the knowledge or approbation of J. Harrell, the security on appeal, and without having taken other security, and by his gross negligence and unskillfulness in his management of the case had discharged said security in law, and that the principal defendants were wholly insolvent.

Again, it is alleged that during the term of indulgence granted, the defendant, Gaulden had caused junior judgments against the said D. Harrell, (the principal debtor,) which were also controlled by the said Gaulden, as attorney of record, to be levied upon the property of the said D. Harrell, and the money made, under said levies, to be paid in satisfaction of said junior judgments to the exclusion of plaintiff's judgment, which, in law, was entitled to the preference by reason of its seniority. And finally, that plaintiff was ignorant of these several delinquencies until April, 1853, less than one year antecedent to the commencement of this action. Such is the plaintiff's case.

The evidence in support of the first allegation leaves us in doubt as to the instructions under which the defendant acted in granting indulgence. We might reasonably expect, in such a case, explicit instructions by personal communication from the client to his attorney. The witness, D. Harrell, does not know certainly, but believes Gaulden acted under a letter of instructions received from his client. No such letter, however, has been introduced by either party. D. Harrell testifies that he exhibited to Gaulden a letter from his client (Crawford) agreeing to indulge him upon certain conditions, and that letter is in evidence. In it, after stipulating for a payment of sixteen per cent. of the debt, Crawford continues: "Let the judgment remain open, and your security be satisfactory to Gaulden, and I am willing, and do promise, not to urge, or cause to be urged, before the 1st of October, 1843, etc."

Crawford *vs.* Gaulden.

Here there is no direct stipulation for additional security for the debt. There was already security, and if that were ample, (as indeed the evidence establishes satisfactorily,) we think this stipulation, in the letter of the plaintiff did not make it incumbent upon the defendant to exact additional security. But it is said the very indulgence granted to the principal debtor discharged his surety, and that this rendered it obligatory on the attorney (defendant) to take new security.

It does not appear to us that the legal effect of this indulgence was to discharge the surety. We do not overlook the principle settled by this Court, that a judgment does not extinguish the relation of principal and surety previously existing between the defendants, nor modify the duties which the creditor owes to the latter.

2. But we hold that where there has been no levy made upon the property of the principal, and no notice given by the surety to the plaintiff to proceed against his property, the rules of law regarding forbearance are the same before as after judgment.

3. One of these rules is, that mere forbearance towards the principal, in the absence of notice to proceed from the surety, does not discharge him.

4. Another rule is, that a promise to forbear for a definite time will not discharge the surety unless it be a promise binding in law upon the creditor, " such as will tie his hands."

5. Still another rule is, that no such promise is binding unless supported by a consideration.

By these rules we will test the effect of the forbearance actually given in this case. The facts disclosed by the record are, that on two different occasions the principal defendant in *fi. fa.* sought indulgence; that the plaintiff each time promised to forbear for one year upon the payment of a specified portion of the debt; that these payments were severally made as required, and the forbearance extended as promised. Were these promises binding upon the plaintiff in *fi. fa. ?* Did they, in law, tie his hands during the stipulated term of forbearance ? Certainly not, unless supported by a consideration.

Crawford *vs.* Gaulden.

In Pabodie vs. King, 12th Johnson's Report, 426, this question came up directly between the parties to the promise of forbearance.  The debtor paid a portion of the debt, upon a promise of a certain forbearance, which promise was not kept, and the debtor sought to shield himself under it.  *Per Curium*, "the promise to forbear was a *nudum pactum*.  In paying the $50 00, King did no more than he was legally bound to do, and the promise on the part of Pabodie was without any benefit to him, and occasioned no loss to King." That is precisely this case.  In the later case of Reynolds vs. Ward, and others, 5th Wendell, 501, the same Court held, that "a promise to pay interest, during the time of forbearance, forms no consideration for the agreement to forbear, when the debtor is already bound to pay interest."  The Court say, *arguendo*, "the promise to pay interest" was a promise to do precisely what he, (the debtor,) was bound to do, without a promise.  If the debtor's promise to pay interest, creates no additional obligation, it is no consideration for a contract to delay."  In this case the question was made by a surety, as in the case at bar.  We recognize as sound and well settled, the principles upon which these adjudications rest.  Is a consideration less necessary to support a promise to forbear, than any other promise whereby the promisor loses an advantage or confers a benefit?  When the principal debtor, D. Harrell, entered into the original contract, upon which the Court gave judgment, condemning him to pay certain money according to its terms, he received a corresponding benefit—an equivalent from the creditor.  Shall he be allowed, after the lapse of years, to set up the payment of a portion of this same money, as a consideration for a new benefit, and thus go on from year to year, piling benefit after benefit upon the primary consideration fully balanced in its inception?  If so, it were difficult upon the principle to find a *nudum pactum.*

If, then, the hands of the plaintiff in execution were at no time "tied" in law, (to use the expressive phrase of Gibbs, C. J., in Orme vs. Young,) the surety, J. Harrell, might at any time have required him to proceed against the principal

debtor. He did not so require—he was not vigilant—he remained quiet under his obligation of suretyship.

6. In Curan vs. Colbert, 3d Georgia Reports, 239, this Court held, that the security in *fi. fa.* was discharged because the plaintiff, after having caused the property of the principal defendant to be taken in execution, without the consent of the surety, dismissed the levy and gave time to the principal, and because at or before the expiration of the indulgence the property of the principal had been removed from the State, and he had become insolvent. And in Brown vs. Riggins' executors, Ibid, 405, they held the surety in *fi. fa.* discharged, because indulgence, for a definite time, (before the expiration of which he became insolvent,) had been granted to one of the principals, and because the property of another principal, which had been taken in execution, was afterwards discharged from levy.

Those cases are easily distinguishable from this. Here, there has never been any property of the principal levied upon and afterwards discharged from the levy. Again, the last indulgence granted in this case, expired on the 1st November, 1844. At that time, and until the early part of January, 1845, (an interval of two months,) there was, of the principal debtor, property enough to have satisfied the *fi. fa.* in a county adjoining that in which the surety resided, which property was subject to the execution. During that interval the surety himself was threatened with a levy; inquired, with surprise, whether confidence in the principal had been lost, and only craved time to procure *payment* from the principal, or to have *his* property seized. This indulgence was granted by *the sheriff* to *the surety*, yet he did nothing for his own safety, but permitted the property of the principal, subject to the execution, to be removed from the State. Surely this case is not analagous to those of Curan vs. Colbert and Brown vs. Riggins' executors.

7. The second allegation is, that after plaintiff's promise to indulge his debtor for one year, and corresponding instructions to the defendant as his attorney, the latter caused certain junior *fi. fas.*, (also under his professional control,) to be

levied upon the property of the same defendant, and appropriated the money made under those levies to the junior *fi. fas.*, in preference to plaintiff's. It does not appear that the plaintiff's instructions to defendant to indulge the debtor were qualified by any reference to the contingency of activity on the part of junior judgment creditors. They were positive, to indulge upon a specified partial payment, the attorney being satisfied with the security. The payment was made. As between client and attorney, then, the latter was positively inhibited from levying for twelve months. But he had other clients, who ordered that their money be made. Was he then to levy and sell again and again under the *fi. fas.* of his vigilant, active clients, and give the benefit to his inactive, indulgent client, indefinitely postponing the former? We do not so understand the duties and obligations of attorneys. Besides, be it remembered, that after the claims of his vigilant clients had been satisfied, and after the indulgence of his forbearing client had expired, there remained, according to the evidence, property enough of the principal debtor within reach of and subject to the *fi. fa.*, which, before this property had been assigned, was taken by the plaintiff from the hands of the sheriff, to whom defendant had delivered it, with orders to make the money, and committed to a newly constituted agent.

We have said we are by no means satisfied that the liability of the surety had been discharged, and connecting the subsequent conduct of the plaintiff with what we have already considered, and conceding, (for the argument,) that the question of the surety's discharge was one of doubt and difficulty, we think he has discharged the defendant from all possible ulterior liability. The liability of the attorney depends upon the discharge of the surety, through his negligence and unskillfulness.

The surety was asserting by his bill in chancery against this plaintiff and defendant both, his discharge, by reason of their joint acts. They both, in their answers, denied his discharge. Pending this litigation, the plaintiff in error turns again to his principal debtor, without the concurrence

of the defendant in error, upon the payment of a large sum of money, releases said principal and his surety, by express contract, from all liability, and thus terminates the litigation in chancery with the surety. The attorney is thus effectually precluded, by the act of the plaintiff in error, from bringing the question of the surety's discharge to the test of judicial decision. Having voluntarily, by express contract, discharged the surety, the plaintiff in error cannot be permitted now to turn upon his attorney and hold him responsible for alleged prior negligence and unskillfulness, whereby in law said surety had been discharged.

In this case the defendant relied upon the Statute of Limitations. The acts of negligence and unskillfulness, charged in the plaintiff's declaration, were done in the years 1842 and 1843, and the action was commenced in the year 1854, an interval of more than ten years, whereas, by our Statute of Limitations, actions of this character must be commenced within four years after the right of action accrues. The plaintiff, however, alleges, in avoidance of the statute, that he was ignorant of the acts complained of until the month of April, 1853, when the cause of J. Harrell vs. Crawford and Gaulden came on to be tried, and the proofs were developed.

8. The doctrine is well settled, that in an action against an agent for negligence or unskillfulness, the Statute of Limitations commences to run from the time the negligent or unskillful act was committed, and plaintiff's ignorance of the negligence or unskillfulness cannot affect the bar of the statute. 3 Barn. & Ald., 288; do, 626; 3 Barn & Cress., 149; 5 Barn. & Cress., 259; 2 Carr & Payne, 238; 3 John. R., 523, (side); 20 John., 33; 5 Wendell, 30; Cheeves, 22; 2 Strob., (Li,) 344.

But, in this case, the plaintiff was informed by the bill in chancery of J. Harrell vs. himself et al., that these acts had been done by the defendant, and that J. Harrell insisted, he was thereby discharged. The record does not show precisely when plaintiff was served with a copy of this bill, but it appears he answered it on the 22d of May, 1845. Could he

Crawford *vs.* Gaulden.

(if ignorance were a sufficient reply to the statute) claim to have been ignorant after that day? In a view of the case most favorable to him, were not the allegations in this bill, verified by the complainant, enough to put him upon enquiry? Would the utmost stretch of liberality to him allow the statute to slumber after this information reached him?, yet he slumbered after this more than eight years—more than twice the statutory limitation.

It was urged in the argument that the statute did not begin to run until the case of J. Harrell vs. Crawford and others was ended. But it would seem from the record that that case never reached a final decree. It would seem that a decree was rendered in 1847, from which an appeal was taken, for a rehearing as a matter of right, under our peculiar judiciary system, and that the case was finally arrested by the compromise in 1853. If the Statute of Limitations was held in abeyance until final decree in that case, it follows that no right of action accrued anterior to such decree, and as there never was a final decree in that case, it would seem that no right of action ever has accrued to the plaintiff, so that his case is not aided by this argument.

In every view of the case we are abundantly satisfied with the verdict.

9. As regards newly discovered evidence, that ground of the motion for a new trial must fail under two oft repeated rulings of this Court:

1. The newly discovered evidence was merely cumulative.

2. The exercise of due diligence, to which other like evidence used on the trial should have stimulated the plaintiff, would readily have disclosed the facts if they exist.

Let the judgment be affirmed.