Simon v. Cathroe Co.

———

EDWARD L. SIMON, APPELLANT, v. H. J. CATHROE COMPANY ET AL., APPLLEES.

FILED MAY 5, 1917.  No. 20016.

1. **Master and Servant: EMPLOYERS' LIABILITY ACT: LIMITATIONS.** Sections 3674, 3679, Rev. St. 1913 (Employers' Liability Act) should

be construed together, and the limit of six months for making a claim for compensation and of one year for agreeing upon the compensation, or for filing of the petition, does not begin to run until six months after the removal of physical or mental incapacity.

2. ———: ———: FILING PETITION. Evidence examined, and *held* to sustain the finding of the district court that the plaintiff was physically incapacitated from the time of the accident until the time of the trial.

APPEAL from the district court for Lancaster county: P. JAMES COSGRAVE, JUDGE. *Affirmed as modified.*

*R. J. Greene,* for appellant.

*Mahoney & Kennedy, Strode & Beghtol* and *Guy C. Kiddoo,* contra.

LETTON, J.

Action under employers' liability act, sections 3642-3696, Rev. St. 1913. H. J. Cathroe Company was the employer and the London Guaranty & Accident Company are insurers of its liability.

On January 15, 1915, plaintiff was a bricklayer engaged in laying brick in the lower portion of a stormwater sewer. A workman whose duty it was to lower brick in an iron basket managed the same so negligently that a brick or the corner of the basket struck the plaintiff on the head, causing a wound from which he bled quite freely, and was obliged to stop working. The wound healed in a week or two, but plaintiff was not able to return to the job, although he afterwards worked for about a week for other parties. A few months afterwards he began to act peculiarly, complained of severe pains in his head, was unable to sleep, assaulted a married son with whom he he had previously been upon good terms, threatened to kill himself and his children, and in other manners manifested a deranged intellect. He consulted a physician and surgeon in April or May of the year following the accident, who told him that he might have a clot of blood upon the brain. He was afterwards, on the complaint of his

son, found to be insane by an insanity commission, and confined in the state hospital for the insane at Lincoln. About September 1, 1916, his skull was trephined and a portion of the cranium about three inches square removed, when a blood clot was found on the brain about the size of an olive. This was removed by the surgeon. Plaintiff recovered from the operation, except for a slight paralysis from which he had not fully recovered at the time of the trial, and which the surgeon testified might continue for a year thereafter or more. It seems clear that the injury caused an effusion of blood which affected to a greater or less extent the plaintiff's mental faculties, and, while he only displayed a tendency to violence occasionally, he suffered from nervousness and sleeplessness and lack of co-ordination of ideas to a greater or less extent until the removal of the blood clot. The cause was tried to the court, which found generally in favor of the plaintiff against the defendant Cathroe Company, that plaintiff was mentally incompetent after the accident until about the 12th day of September, 1916, when he was discharged from the state hospital for the insane at Lincoln; that up to the present time his disability has been total, but that he is recovering, and that it is impossible to determine beyond six months the length of time during which he will be partially disabled; that the occupation of such petitioner was seasonal; and that the plaintiff ought to recover from the defendant Cathroe Company for a total disability for a period of 72 weeks at $10 a week in the gross sum of $720, and for partial disability at $5 a week for six months in the future. No allowance was made for medical or hospital services. The case against the London Guaranty & Accident Company was dismissed.

Plaintiff complains of the refusal to allow reasonable medical and hospital expenses, and of the findings that the occupation of plaintiff was seasonal, and that the disability of plaintiff would continue only for six months following the trial. As to the first point: The allowance was evidently refused because no medical expenses were incurred

"during the first twenty-one days after disability begins." Section 3661. Even if we should consider that the disability for which medical aid was needed did not begin until the trouble was diagnosed as a blood clot, it was about six months afterwards before the aid of the surgeon was again sought and the operation performed. The disability, except for two weeks that he was able to work, extended to the time of the trial, which took place 102 weeks after the injury, and hence the recovery should have been for 100 weeks at $10 a week, or $1,000. Even if the occupation is seasonal, as the court held, the statute would not reduce the allowance to less than $10 a week at the wages plaintiff was earning. As to the allowance for future partial disability: The surgeon testified that immediately after the operation the plaintiff suffered a slight paralysis, and that it has not entirely disappeared, but it would probably last no longer than one year after the time of the operation. Since either party has the right at any time after six months from the award to have the question re-examined under sections 3682, 3683, Rev. St. 1913, on the ground of increase or decrease of incapacity, we will not interfere with the finding of the district court as to partial disability. The judgment of the district court will be modified in accordance with these findings.

As to the cross-appeal: In addition to denials, the answers plead that the parties had not agreed upon compensation within one year after the accident, and that the plaintiff did not file his petition to recover compensation within said time; that his claim for compensation was not made within six months after the occurrence of the injury, and he was not suffering from any physical or mental incapacity during such time which would excuse his failure; that no medical and hospital services were needed during the first 21 days of his alleged disability, and no claim was made for the same upon the Cathroe Company. Section 3679, Rev. St. 1913, provides: "That all claims for compensation shall be forever barred unless, within one year after the accident, the parties shall have agreed upon the

compensation payable under this article, or unless, within one year after the accident one of the parties shall have filed a petition as provided in the next following section hereof." Section 3680 provides and regulates the procedure in actions under the statute. Section 3674 provides: "No proceedings for compensation for an injury under this article shall be maintained, unless a notice of the injury shall have been given to the employer as soon as practicable after the happening thereof; and unless the claim for compensation with respect to such injury shall have been made within six months after the occurrence of the same, or in case of the death of the employee, or in the event of his physical or mental incapacity, within six months after death or the removal of such physical or mental incapacity." It is also provided that "want of such written notice shall not be a bar to proceedings under this article, if it be shown that the employer had notice or knowledge of the injury."

We are of opinion that section 3674 and section 3679 should be construed together, and that as to the limit in section 3679 of one year the period must be construed as in section 3674, so that the time begins to run after the removal of such physical or mental incapacity.

The accident occurred on January 15, 1915. The petition was filed November 1, 1916. The first claim for compensation was made September 26, 1916, which was a few days after the plaintiff was discharged from the insane hospital, but it was shown that both defendants had notice and knowledge of the accident a few days after it occurred. If plaintiff was physically and mentally incapacitated until discharged, as found by the district court, the claim was filed in ample time.

The cross-appellant contends that this finding is not supported by the evidence. It is shown that in 1913 plaintiff had been confined in the hospital as a dipsomaniac, but that he had not indulged in liquor again until after the accident and there is no proof of excessive use of intoxicants since that time. The attending physician at the

hospital gave the result of his physical and mental examination of plaintiff and testified that in his opinion he was not insane, but he was not informed of the existence of the blood clot, nor did he testify that plaintiff had not been mentally incapacitated after the accident. We are unable to determine from the evidence at just what period before the six months after the accident expired the mental incapacity of the plaintiff developed, but when the whole testimony on this point is considered the finding that his mind was affected before the expiration of the time and that not until after the operation did his faculties clear is supported by the evidence. The injury seemed slight at the time and the existence of the blood clot was not suspected or known until he had visited the surgeon. The rule announced in *Johansen v. Union Stock Yards Co.*, 99 Neb. 328, is that in a case of an injury which at first seems slight but afterwards develops graver symptoms, the injury occurs when the diseased condition culminates. The finding of the district court that the claim was filed in time is supported by sufficient evidence.

The judgment of the district court is modified so that plaintiff shall recover the sum of $1,000 for total disability to time of trial and $5 per week for partial disability for six months thereafter, and as so modified the judgment is

AFFIRMED.

CORNISH, J., not sitting.