COOKE v. HOLLAND FURNACE CO.

1. MASTER AND SERVANT—WORKMEN'S COMPENSATION LAW—LIMITATION OF ACTION.

The limitation provided in sections 15 and 4, part 2, of the workmen's compensation act (sections 5445, 5434, 2 Comp. Laws 1915), begins to run from the date of the accident, and not from the time of disability.

2. SAME — WORDS AND PHRASES — "INJURY" — CONSTRUCTION OF STATUTE—INTENT.

The word "injury," as used in said sections, having acquired in the law a well-defined and well understood meaning, it must be *held*, to have been used by the legislature as it was commonly understood, in the absence of a special definition in the act.

3. SAME—CLAIM FOR COMPENSATION—MEDICAL SERVICES—LIMITATION.

Where claimant was injured, while in defendant's employ, by a falling bolt striking him on the head, and, after first aid by the foreman, he continued at work for nearly a year, when serious disability developed as a result of the accident, requiring an operation on the skull, and claim for compensation was not served on the employer until after the operation, although it had knowledge of the

accident by its foreman and superintendent, an award of compensation and for medical and hospital services by the industrial accident board, under the workmen's compensation law, was unauthorized, the claim not having been made within the time limited in sections 15 and 4, part 2, of said act.

4. SAME—"ACCIDENT"—"INJURY."

While the words "accident" and "injury" are not synonymous, the accident produced the injury, and in point of time they are concurrent.

Certiorari to Industrial Accident Board. Submitted January 15, 1918. (Docket No. 72.) Decided March 27, 1918.

Fred H. Cooke presented his claim for compensation against the Holland Furnace Company for injuries received in defendant's employ. From an order awarding compensation, defendant and the General Accident, Fire & Life Assurance Corporation, insurer, bring certiorari. Reversed, and order vacated.

*Kerr & Lacey,* for appellants.

*Ellis & Ellis,* for appellee.

The facts in this case are not in dispute, and, briefly stated, are as follows: Plaintiff for several years prior to October, 1915, was in the employ of the Holland Furnace Company. On or about the 6th of that month while at work in the foundry of that company a bolt from an overhead track fell and struck him on the head. The wound bled profusely. He was given first aid by the foreman and the wound washed out with peroxide. He continued to work until August following, when he laid off for a couple of weeks. Commencing in December following the accident he had headaches, sleepiness, and was dizzy, and a lump appeared on his head where the bolt struck him. This condition caused him to lay off the two weeks in August.

After he resumed his work in August he worked until September 14th, following. The 17th or 18th of September plaintiff had an X-ray made, and the latter part of September or first of October, an operation was performed which revealed a fracture of the skull and a softening of the bone, with an accumulation of pus underneath necessitating the removal of the diseased bone, and trepanning the skull. Plaintiff resumed his work November 14th. Claim for compensation was served on the Holland Furnace Company October 9, 1916. The record discloses that defendant, by its foreman and superintendent, had knowledge of the accident, but it also discloses that no claim for compensation was made until the formal one of October 9th. From an award for compensation for 8-4/7 weeks and for medical and hospital services, the defendant comes to this court by writ of certiorari.

FELLOWS, J. (*after stating the facts*). The plaintiff insists, in support of this award, that the "injury" did not occur until disability took place, or, to use the language of the board in its findings:

"At the time he became definitely satisfied that the disability he was suffering was the result of the accident."

The defendant, on the other hand, insists that the "injury" to plaintiff occurred when the accident happened; that at that time plaintiff received the "injury" within the meaning of the act, and that the disability later obtaining, and the seriousness of the conditions, were the results of the injury then inflicted. The provisions of the employer's liability law here involved are sections 15 and 4, of part 2 (sections 5445, 5434, 2 Comp. Laws 1915). They are as follows:

"SEC. 15. No proceedings for compensation for an injury under this act shall be maintained, unless a notice of the injury shall have been given to the employer three months after the happening thereof, and

unless the claim for compensation with respect to such injury shall have been made within six months after the occurrence of the same; or, in case of the death of the employee, or in the event of his physical or mental incapacity, within six months after death or the removal of such physical or mental incapacity."

"SEC. 4. During the first three weeks after the injury the employer shall furnish, or cause to be furnished, reasonable medical and hospital services and medicines when they are needed."

At the present term four other cases involving the question here under consideration were submitted, and we have had the benefit, not only of the argument made and briefs filed in this case, but also the arguments and briefs in the other cases. The importance of the question has also called for independent research.

We are not here dealing with the question of the sufficiency of notice, or claim, as we were in the cases of *Matwiczuk* v. *Foundry Co.*, 189 Mich. 449; *Shafer* v. *Parke, Davis & Co.*, 192 Mich. 577; and *Purdy* v. *City of Sault Ste. Marie*, 188 Mich. 573. Therefore the cases of *Ridgeway* v. *City of Escanaba*, 154 Mich. 68, and *Pearll* v. *City of Bay City*, 174 Mich. 643, do not apply. See *Van Auken* v. *City of Adrian*, 135 Mich. 534; *Holtham* v. *City of Detroit*, 136 Mich. 17.

We are confronted for the first time with the question of whether the statute begins to run from the date of disability (or ascertainment and definite satisfaction that disability exists), or from the date of the accident. We must approach this question, having full regard for the fact that under the division of powers found in the Constitution, our duty is not to enact but to expound the law, not to legislate but to construe legislation; to apply the law as we find it, to maintain its integrity as it has been written by a co-ordinate branch of the State government. If the law as written works hardships in a special class of cases the remedy lies with the branch of the government charged with

the duty of enacting laws. If one does not protect himself and his rights under the law as written it is his misfortune, and this court should not, by judicial legislation, for the purpose of relieving that misfortune, write into the statute a provision that the legislature has not seen fit to enact. During the course of an opinion worthy of careful perusal and consideration, it was said by Mr. Justice Marshall, speaking for the supreme court of Wisconsin, in *City of Milwaukee* v. *Miller,* 154 Wis. 652, a case involving the workmen's compensation law of that State:

"That is his misfortune and, however much it may be regretted, it is far better that the integrity of the law be not invaded than that it be impaired in the slightest degree in the particular instance to avoid the consequence of his not knowing or appreciating its requirements."

Prior to legislation of this character courts had to deal with statutes of limitation having relation to common law or statutory actions for negligence, and the holdings of the courts were in harmony that the injury occurred, and the statute began to run on the happening of the negligent act. Thus it was held by the supreme court of Iowa, in the case of *Gustin* v. *County of Jefferson,* 15 Iowa, 158. We quote the syllabus:

"The statute of limitations as to actions for damages resulting from injuries to the person, commences to run from the time the injury is done, and not from the time the party injured becomes fully advised of the extent thereof."

In the case of *Leroy* v. *City of Springfield,* 81 Ill. 114, it was said:

"Appellant asks, when shall it be said the cause of action arose, as, in many cases, the extent of the injury cannot be known for a long time?

"The principle, we understand, is, that the cause of action arises at the time the injury was done, and the statute begins to run from that day."

In *Atchison, etc., R. Co.* v. *King,* 31 Kan. 708, it was held by the court:

"The liability of the railroad company for the injury complained of accrued when the accident occurred."

In *Piller* v. *Railroad Co.,* 52 Cal. 42, it was held, we quote the syllabus:

"The liability of a railroad company for damages for an injury done to a passenger by collision of its cars, accrues when the collision occurs, and the action must be brought within two years from such time."

In *Mardis* v. *Shackleford,* 4 Ala. 493, it was said by the court:

"In respect to the statute of limitations, it may be regarded as settled law, that it began to run from the time the intestate was chargeable with negligence; for then a right of action accrued in favor of the plaintiff."

In *Crawford* v. *Gaulden,* 33 Ga. 173, Mr. Justice Jenkins, speaking for the court, said:

"The doctrine is well settled that in an action against an agent for negligence or unskillfulness, the statute of limitations commences to run from the time the negligence or unskillful act was committed, and plaintiff's ignorance of the negligence or unskillfulness cannot affect the bar of the statute."

See, also, the following cases: *Fowlkes* v. *Railroad Co.,* 56 Tenn. 829; *Taylor* v. *Railroad Co.,* 53 Hun (N. Y.), 305; *Wilcox* v. *Executors of Plummer,* 4 Pet. (U. S.) 172; *Bank of Utica* v. *Childs,* 6 Cow. (N. Y.) 238; *The Governor* v. *Gordon,* 15 Ala. 72.

At the time of the enactment of this legislation the word "injury" had acquired in the law a well defined and well understood meaning; indeed counsel for plaintiff in the instant case frankly states:

"There must necessarily be a new definition of the word "injury" to embrace the circumstances that arise under the workmen's compensation law."

But the difficulty with this suggestion lies in the fact that the legislature did not use this word in the act in question with the view of some new definition which this court or an administrative body might later see fit to coin. It was used in the act as it was commonly understood at the time. Our legislature did not see fit to give it a special definition as did the legislature of Nebraska, as we shall presently see.

The two cases most strongly relied upon by the plaintiffs in these cases are *Johansen* v. *Union Stock Yards Co.*, 99 Neb. 328, and *In re McCaskey* (Ind. App.), 117 N. E. 268. An examination of the Nebraska act discloses that both the words "accident" and "injury" were defined by the act itself: Section 3693-*b* Rev. Stat. 1913. This section reads in part as follows:

"The word 'accident' as used in this article shall, unless a different meaning is clearly indicated by the context, be construed to mean an unexpected or unforeseen event, happening suddenly and violently, with or without human fault and producing at the time objective symptoms of an injury. The terms 'injury' and 'personal injuries' shall mean only violence to the physical structure of the body and such disease or infection as naturally results therefrom." * * *

By this statutory definition of the word "injury" the *result* of violence to the physical structure of the body was included within the meaning of the word, and it necessarily followed that, under the statute, the result of the accident was the injury. If those results were delayed the injury was delayed. But this is purely statutory, and is convincing that the legislature of that State had in mind the making of a statutory definition of the word not in accordance with its generally accepted meaning. This case was followed by the Nebraska court in the case of *Simon* v. *Cathroe Co.*, 101 Neb. 211 (162 N. W. 633), a case which we were asked to follow in *Armstrong* v. *Pickle Co.*, 197 Mich. 334. This suggestion we declined because of the differences

in the statutes and in the facts of the two cases. The *Indiana Case* is from the appellate court, division No. 1, and involves the question of payment for medical services. The court for its authority relies upon a holding of the Connecticut commission, the holding of the Michigan commission (*In re Hart,* Mich. W. C. C. 338, a case similar to the instant case), upon two Massachusetts cases (*Johnson's Case,* 217 Mass. 388, and *Hurle's Case,* 217 Mass. 223), and 1 Honnold on Workmen's Compensation, § 198. In *Hurle's Case* the question of notice or claim was not involved. The workman in that case had suffered an acute attack of optic neuritis incurred in the performance of his usual duties in the usual way. It was held that the employer was liable. Not only was it an occupational disease case, but it also is not in accord otherwise with the holding of this court in *Kutschmar* v. *Manufacturing Co.,* 197 Mich. 146. In *Johnson's Case* the question of an occupational disease was also involved. This case is likewise not in accord with the holding of this court in *Adams* v. *Color Works,* 182 Mich. 157, in which Mr. Justice STONE, speaking for the unanimous court, fully considered these two Massachusetts cases, and says:

"As 'accident' is the controlling word in our act, we do not think that the Massachusetts decision should be held to apply here, as the construction of that act has little, if any, bearing on the Michigan act."

He then proceeds to carefully consider the provisions of the Massachusetts act and distinguished it from our act. It is unnecessary for us to repeat here what was there so fully considered. Obviously the Massachusetts cases cannot be regarded as persuasive here.

In section 198, 1 Honnold on Workmen's Compensation, we find the following, and it is all that appears in that section of importance here:

"The Michigan limit is 3 weeks, commencing when it is first needed."

To support this text the decision of the industrial accident board in *Re Hart*, above mentioned, is alone cited. We are not impressed that we should follow the holding of the Indiana court.

In the case of *Podkastelnea* v. *Railroad Co.*, 198 Mich. 321, this court had under consideration one of the sections here involved, section 15. We there pointed out some of the purposes of the limitations found in this section, quoted the provisions of the English act, called attention to the fact that the legislatures of some of our sister States have adopted similar provisions, and stated:

"The legislature of this State has not seen fit to do so. If the provisions of our act are not sufficiently liberal as to making claims for compensation, the question is one for the legislative branch, not for the judicial."

We there reversed the award of the board on the ground that the claim for compensation was not seasonably filed and that the delay was not excused by the fact that the claimant was unable to personally make out and personally mail or deliver the claim.

In the case of *Armstrong* v. *Pickle Co.*, *supra*, this court gave effect to the limitations found in this section and set aside the award of the board.

In *Ehrhart* v. *Industrial Accident Commission*, 172 Cal. 621, the supreme court of California said:

"It was not, we believe, the intention of the lawmakers to open the statute of limitations and to extend it beyond the period of six months for the purpose of enabling a claimant to present an entirely new case based upon the alleged results of an injury which had never before been called to the attention of the commissioners. To hold otherwise would be to make the statute an instrument for the encouragement of false claims or those based upon remote and unsatisfactory

speculation and peradventure regarding the cause of a disability manifesting itself long after the happening of the accident. One of the purposes of the time limit imposed by the various subdivisions of section 16 was to cause an early submission to the commissioners of the injuries to the employee, so that the commissioners by their own observation and with the aid of expert testimony might determine, not only the condition of the applicant at that time, but the probable future results of the accident. This policy is manifest from the fact that where no disability has occurred at the time of the hearing, but is likely to do so in the future, the commission may retain jurisdiction. (Section 25 [c].) In other words, prompt inquiry regarding the *injuries* in all their details by the commission was evidently intended by the lawmakers".

The supreme court of Illinois has had this question of limitation of time for filing claim for compensation before it and has held such provision mandatory, and the claim barred unless made within the time. *Haiselden* v. *Industrial Board,* 275 Ill. 114; *Bushnell* v. *Industrial Board,* 276 Ill. 262.

The New York act differs from our act with reference to the giving of notice and patterns after the idea of the English act. It contains this provision (section 18, art. 2, chap. 41, Laws of New York, 1914):

"The failure to give such notice unless excused by the commission either on the ground that notice for some sufficient reason could not have been given, or on the ground that the State fund, insurance company, or employer, as the case may be, has not been prejudiced thereby, shall be a bar to any claim under this chapter."

But it was held that the commission might not arbitrarily excuse the failure to give notice. *Prokopiak* v. *Buffalo Gas Co.,* 176 App. Div. 128; *Sicardi* v. *Sarnoff Hat Co.,* 176 App. Div. 13, and in *Bloomfield* v. *November,* 219 N. Y. 374, it was said in the majority opinion of the court of last resort:

"We do not intend to qualify what has often been said by this court to the effect that the compensation law should be liberally construed to the end of accomplishing the purpose for which it was enacted, and that the course of the claimant should not be beset with technicalities. The legislature, however, has deemed it proper and essential, under ordinary circumstances, that a written notice of disability and claim should be promptly served so as to give an employer the opportunity to investigate the circumstances of the claim. This requirement ought not to be treated as a mere formality or be dispensed with as a matter of course whenever there has been a failure to serve such notice."

Upon principle, we are persuaded that the defendant must prevail in its contention. When the bolt fell, striking the plaintiff on the head, it fractured his skull. That was the injury. The formation of an abscess, the accumulation of pus, the softening of the bone, were the results of that fracture—of the injury received; while these results rendered the injury more severe, the injury was there from the first and subsequent want of care but aggravated it. Had the plaintiff then made his claim for compensation and had proper medical treatment, which his employer was bound to pay for under the provisions of section 4, it is highly probable he would have been saved much pain, and a serious and expensive operation would have been obviated. This would have been beneficial alike to him and his employer.

While the words "accident" and "injury" are not synonymous, the accident produced the injury and in point of time they were concurrent. We are compelled to hold, must hold, unless we resort to judicial legislation, that the legislature by these two sections fixed the date of the injury at the date of the accident, and not some remote date thereafter when the injured employee became definitely satisfied that he was disabled as a result of the accident.

It follows that the award for compensation and for medical services rendered nearly a year after the date of the injury must be reversed and vacated.

OSTRANDER, C. J., and BIRD, MOORE, STEERE, BROOKE, and STONE, JJ., concurred. KUHN, J., did not sit.