[No. 21707.   Department One.   March 25, 1929.]

FRANK FEE, *Appellant,* v. DEPARTMENT OF LABOR AND INDUSTRIES, *Respondent.*[1]

[1]Reported in 275 Pac. 741.

*Rex S. Roudebush,* for appellant.

*The Attorney General* and *Harry Ellsworth Foster, Assistant,* for respondent.

HOLCOMB, J.—This case was before the lower court on appeal from the decision of the joint board of the department of labor and industries, rejecting the claim of appellant for specific, major, permanent, partial disability, consisting of the loss of vision of his left eye. The superior court made findings and conclusions, and rendered a judgment affirming the action of such board, from which this appeal is presented.

The evidence in the record is undisputed. It shows that on February 15, 1926, when appellant was engaged in extrahazardous employment, under the state compensation act, wrecking a building, he was injured by a piece of heavy flooring which flew up and struck him across the right cheek, nose and left eye. The injury that then resulted to appellant, consisted of a swelling of his cheek, nose and eye, which was very painful. He was treated for several weeks, beginning a day or two after the injury, by Doctors Yocum and Curran, contract doctors for the employer (Albertson, Cornell Bros. & Walsh) who were not eye specialists. After several weeks of treatment, the swelling was reduced, and appellant's left eye then appeared to be affected by the injury. Up to June, 1926, appellant suffered more or less pain in this eye, which was somewhat sensitive to light and it also watered some. There was nothing at that time, however, indicating any serious, permanent injury to the eye. His eye trouble continuing, at his own expense he consulted several eye specialists during the months following.

From June, 1926, throughout the rest of that year and until March, 1927, the pain in the eye gradually increased, the white of the eye being so bloodshot that

it looked "red as blood;" and during November and December, 1926, and January, 1927, appellant ceased work and did nothing but have his eye treated. By March, 1927, the eye trouble yielded to treatment, the bloodshot condition cleared up and the pain ceased about that time. During the preceding period, although a little cloudiness appeared on the cornea of the eye in June, 1926, the vision of the eye was not impaired to any appreciable extent. The attention of the eye specialists had been directed to the elimination of the bloodshot condition and the pain. Beginning with March, 1927, and about the time the pain and bloodshot condition ceased, the cloudiness upon the cornea became more dense, and thereafter gradually took the form of what the specialists called "white opacity." By the end of the second year, following the injury, this condition had so progressed as to become a mass of white opacity, at which time appellant could see only the form of a man at a distance of six or eight feet with this eye.

Until February, 1928, the specialists all held out the hope of successfully treating the film on the eye and restoring normal vision. In that month appellant was informed, for the first time, that there was no hope of cure, and that he would, probably, in a few more months, become totally blind in that eye. Immediately, after receiving that information, appellant requested Dr. Curran to prepare a claim to be presented to the department of labor and industries, in order that he might be properly compensated for the injury which had then culminated in a specific, major, permanent, partial disability. The claim was prepared and forwarded on February 7, 1928, and was rejected by the department on March 28, 1928; the reason for the rejection being that no claim had been filed by, or on behalf of, the workman, within one year after the

day upon which the injury occurred or the right thereto accrued.

There is in the record the certificate of Dr. Balabanoff, an eye specialist who had died prior to the hearing before the department, which is undisputed. This certificate shows that he examined the eye for the first time on November 1, 1926, at which time he diagnosed the trouble as conjunctival inflammation, slight, and with a dense corneal opacity, apparently stationary on the inner half of the cornea, nasal side. The extent of the vision of the left eye was then determined. He then reported the case to Doctors Yocum and Curran, and certified that the case was not serious, as the cornea appeared clear for the most part, vision was almost normal, and could be brought to normal with correcting lens. He saw the patient no more until March 20, 1928. On examination on that day, he found that the interstitial keratitis, which he thought was stationary on November 1, 1926, had proven to be a progressive keratitis, which had extended; and, on March 20, 1928, had involved almost the entire cornea, with the exception of a few clear spots of corneal tissue through which the iris and pupil could be seen. He then certified that, if the interstitial keratitis kept progressing, as he thought it would judging from the progress it had made between the two examinations, in a few months the entire cornea would be a mass of white opacity with no vision left; that no form of treatment could prevent the eye from becoming totally blind and useless; that in his opinion it would be a permanent disability.

The single issue presented by this appeal is whether the period of one year, for the filing of this claim under the statute, commenced with the date of the accident or with June, 1926, when appellant first noticed that his left eye had been injured and began

to get treatments for it, or whether the period commenced to run from the time appellant's vision was seriously impaired and it became manifest that the injury had culminated in a permanent disability to that organ.

Respondent and the trial court both relied upon our decision in *Stolp v. Department of Labor and Industries,* 138 Wash. 685, 245 Pac. 20. The trial judge said that the *Stolp* case governed the present case because the injury to the eye became evident in June, 1926. He, therefore, thought that, under the *Stolp* case, the statute of limitations would begin to run from that date because the actual injury was then discovered.

We think this incognizant of the undisputed evidence in this case and a misconception of the effect of the decision in the *Stolp* case.

The statute, Rem. Comp. Stat., § 7686, provides that:

"No application shall be valid or claim thereunder enforceable unless filed within one year after the day upon which the injury occurred *or the right thereto accrued.*" (Italics ours.)

When did the right accrue?

The evidence in the present case shows that appellant had the reasonable hope, justified by the specialists who treated him, that the vision of the eye would be saved. While there was pain and discoloration of the eye, there was no thought, on the part of any of the eye specialists, that the sight would be lost, until about February, 1928. Up to that time appellant could not have recovered for any permanent, partial disability, and any such claim would properly have been rejected by the department. His knowledge that there was some injury to the eye in June, 1926, was not knowledge of any permanent, partial disability. The only knowledge he then had was that he had a painful

and discolored eye, which did not even prevent him from working.

In the *Stolp* case, the workman was engaged in an extrahazardous occupation on November 26, 1922, and on that day accidentally struck his left eye on an air compressor pipe. Thereafter he consulted a physician, but neither he nor the physician apprehended any serious injury from the blow. He continued in his work for a period of about fourteen months, wholly without appreciation that the sight of his eye was impaired, until on or about January 15, 1924, when he became aware that he had lost the sight of that eye, and on May 22, 1924, he filed an application for compensation under the workmen's compensation law.

Respondent lays stress upon the following language in that opinion:

"Prior to the time of the impairment of the sight, the respondent would not have been entitled to compensation under the workmen's compensation act, as up to that time he had not in any substantial respect suffered damage."

While the above statement was true in that case, we do not think it militates against a workman who may have suffered some compensable damage, but who, in the hope of preventing any permanent injury and loss, makes no claim for the minor loss, but continues to endeavor to prevent permanent, partial disability, for which hopes are held out to him by those specially skilled in that line to whom he applies for treatment.

In that case, we cited and relied upon, among others, a decision by the supreme court of Nebraska, *Johansen v. Union Stockyards Co.*, 99 Neb. 328, 156 N. W. 511. There, the court held, under a six months limitation statute of that state, that when an accident to an eye, which at first appeared not to be serious, thereafter

resulted in a diseased condition which destroyed its sight, the injury occurred when the diseased condition culminated. That case was followed and approved by the same court in *Simon v. Cathroe Co.*, 101 Neb. 211, 162 N. W. 633; in *Selders v. Cornhusker Oil Co.*, 111 Neb. 300, 196 N. W. 316; and *McGuire v. Phelan-Shirley Co.*, 111 Neb. 609, 197 N. W. 615.

In the last cited case, the court held that accidents resulting in injuries which prove to be progressive in their nature are of a class where the workman cannot be precluded from demanding his rights under the workmen's compensation act before such rights can reasonably be ascertained. The *Selders* case was to the same effect. See, also, *Hines v. Norwalk Lock Co.*, 100 Conn. 533, 124 Atl. 17.

We are convinced that, under the undisputed evidence in this case and the language of our statute, the decision in the *Stolp* case sustains appellant, rather than respondent, and requires a reversal of the judgment.

Reversed.

FULLERTON, PARKER, and BEALS, JJ., concur.

TOLMAN, J. (dissenting)—I cannot agree with the construction which the majority has placed upon the statute, or with the view it takes of the holding in *Stolp v. Department of Labor and Industries*, 138 Wash. 685, 245 Pac. 20.

In my judgment, a right to compensation arose at the moment that it was known that the eye had been injured. That the extent of the injury, or what the final result thereof would be, was not then known, does not lessen or militate against the fact that the right to compensation then accrued.

In this particular case, it seems clear that we have an honest claim, and the delay in presenting it, while

344

unwise, was not dishonest; but if the majority rule prevails, the way will be opened for the presentation of dishonest and fictitious claims after such a lapse of time as will make the department helpless in contesting them.

In my opinion, the only safe rule is that of the *Stolp* case, strictly construed, to the effect that the limitation begins to run as soon as a right to compensation accrues.

I therefore dissent.

[1]Reported in 275 Pac. 733.